775 So.2d 735 (2000)
Jimmy F. WILSON a/k/a Jimmy Franklin Wilson, Appellant,
v.
STATE of Mississippi, Appellee.
No. 98-KA-00256-COA.
Court of Appeals of Mississippi.
May 9, 2000.
Rehearing Denied October 10, 2000.
Certiorari Denied December 21, 2000.
*737 Lynda Carol Robinson, Jackson, Attorney for Appellant.
Office of the Attorney General by Pat S. Flynn, Attorney for Appellee.
BEFORE McMILLIN, C.J., BRIDGES, AND PAYNE, JJ.
BRIDGES, J., for the Court:
¶ 1. On October 9, 1996, Jimmy Franklin Wilson was indicted on charges of aiding and abetting in the sale of cocaine and sale of cocaine by a grand jury sitting in Washington County. Wilson was convicted on both counts in the Circuit Court of Washington County on January 24, 1997, and sentenced to serve ten years for aiding and abetting in the sale of cocaine and twenty years for the sale of cocaine in the custody of the Mississippi Department of Corrections, with the sentences to run concurrently. In addition, Wilson was assessed fines totaling $5,000 along with court costs, laboratory fees, and bond fees. Wilson now appeals his conviction and sentence to this Court asking judicial remedy for the following alleged errors at trial
I. DEFENDANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL.
A. DEFENSE COUNSEL FAILED TO PROPERLY PERFORM DISCOVERY AND FILE PRETRIAL MOTIONS TO PRESERVE ISSUES FOR APPEAL.
B. DEFENSE COUNSEL'S WAIVER OF A BATSON CHALLENGE DENIED DEFENDANT A FAIR TRIAL BY A JURY OF HIS PEERS.
II. THE TRIAL COURT ERRED IN ALLOWING AN AUDIO TAPE RECORDING OF THE ALLEGED DRUG TRANSACTION INTO EVIDENCE.
III. DEFENDANT'S CONSTITUTIONAL RIGHT GUARANTEED BY THE "DOUBLE JEOPARDY" CLAUSE OF THE FIFTH AMENDMENT WAS VIOLATED BY PROSECUTING HIM FOR BOTH AIDING AND ABETTING IN THE SALE OF COCAINE AND FOR THE SALE OF COCAINE.
Finding Wilson's last allegation of error entirely correct, we reverse in part and affirm in part.

FACTS
¶ 2. Agent Stacey James of the Central Delta Drug Task Force, Agent Charles Moore, formerly of the Central Delta Drug Task Force, and confidential informant Dorsey Taylor traveled in an unmarked police vehicle from Greenville, Mississippi to Arcola, Mississippi to conduct a sting operation involving the sale of narcotics. Along with James, Moore and Taylor, Agents Steve Bingham and Stan Bagley followed in a separate surveillance car. Upon entering the city limits of Arcola, everyone proceeded to Tam's Grocery, hoping to find someone there to facilitate the illicit transaction.
¶ 3. Taylor recognized the defendant, Jimmy Franklin Wilson, and approached him in Tam's Grocery in an effort to procure two hundred dollars worth of crack cocaine. While Wilson and Taylor conversed, James and Moore inconspicuously browsed around the store surveying its merchandise. Bingham and Bailey sat patiently in the surveillance car a few blocks away listening to the entire endeavor on Taylor's hidden body microphone.
¶ 4. A short while later, Taylor and Wilson exited the store and spoke for a few *738 more minutes. Wilson then got into his van, and Taylor returned to the unmarked police car and instructed the two lead operatives to follow Wilson to a local automotive repair shop. Again, Bingham and Bailey followed at a safe distance still recording Taylor's every word. After everyone arrived at the designated location, James Moore and Taylor parked one or two houses down from the shop. From that vantage point, the agents witnessed Wilson speak to a woman later identified as Sandra Willis. After talking briefly with Willis, Wilson handed her a white capsule. As Willis approached the car, Taylor exited the vehicle and spoke with Willis. Both Taylor and Willis then returned to the unmarked police car and got into the back seat. Willis gave the white capsule containing several white rock like objects to James in return for two hundred dollars in cash. Willis got out of the car and all involved parted ways. A crime laboratory analysis was performed on the substance sold to James and determined it to be cocaine.
¶ 5. Both Wilson and Willis were arrested and indicted for crimes arising out of the aforementioned single transaction. Willis made a deal with the district attorney for a suspension of the charges against her in exchange for her truthful testimony regarding the alleged drug sale.

LEGAL ANALYSIS

I. DEFENDANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL.
¶ 6. In determining whether or not defense counsel committed any error egregious enough to undermine Wilson's right to a fair trial, Wilson must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." Leatherwood v. State, 473 So.2d 964, 968 (Miss.1985). In making this determination, this Court must find that Wilson's counsel was both deficient and that deficiency was prejudicial based upon the totality of the circumstances. Moody v. State, 644 So.2d 451, 456 (Miss.1994). Wilson faces a very stringent standard to overcome because trial counsel is presumed to be competent. Brooks v. State, 573 So.2d 1350, 1353 (Miss.1990). Furthermore, if trial counsel is reasonably effective, the constitutional standards are met, regardless of the client's evaluation of his performance. Brooks, 573 So.2d at 1353.
¶ 7. Specifically, Wilson cites trial counsel's failure to adequately conduct discovery and failure to preserve Batson objections for appeal as the basis for this allegation of error. The United States Supreme Court has held that when "a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland v. Washington, 466 U.S. 668, 693, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
¶ 8. A clear two part test articulated in the Stricklandcase and cited with approval in Gilliard provides that Wilson must show that his counsel's conduct was so deficient that he was not functioning as counsel guaranteed by the Sixth Amendment, and that if his counsel is shown to be ineffective, then he must further show that his counsel's deficient performance prejudiced his defense. Gilliard v. State, 462 So.2d 710, 714 (Miss.1985).

A. DEFENSE COUNSEL FAILED TO PROPERLY PERFORM DISCOVERY AND FILE PRETRIAL MOTIONS TO PRESERVE ISSUES FOR APPEAL
¶ 9. Wilson alleges reversible error can be found in his trial counsel's failure to file pretrial motions other than a motion for discovery. Specifically, Wilson objects to trial counsel's failure to file a motion to suppress the audio tape recording of the alleged drug sale being entered into evidence. It is clear in our state's case law that the filing of pretrial motions falls *739 squarely within the ambit of trial strategy. Hall v. State, 735 So.2d 1124, 1127 (Miss. Ct.App.1999) (citing Murray v. Maggio, 736 F.2d 279, 283 (5th Cir.1984)). No clearer statement can be made regarding this allegation of error. Since this decision is considered trial strategy, it is impossible for this Court to say that Wilson's trial counsel's conduct was so deficient as to be considered not functioning as counsel as guaranteed by the Sixth Amendment. Even if trial counsel was deficient in not filing pretrial motions, Wilson does not offer any proof that he suffered any prejudice due to counsel's inaction. Thus, we proceed to the Batson issue.

B. DEFENSE COUNSEL'S WAIVER OF A BATSON CHALLENGE DENIED DEFENDANT A FAIR TRIAL BY A JURY OF HIS PEERS.
¶ 10. Wilson argues that trial counsel's failure to preserve the Batson issue for appeal is reversible error. We disagree. The record reflects that during the jury selection process when each side began exercising their respective pre-emptive challenges, the State first raised the Batson issue questioning defense counsel's excusal of four white jurors. Defense counsel responded as follows;
MR. PERKINS: If I might respond. Two responses, your Honor. The State seems to like striking blacks. I don't recall the State striking any whites. And second of all, your Honor, I've left a number of whites on here. If the Court wants more specific reasons, I'll be more than happy to make them, but I'd like for the State to also give reasons, if we're going to get into that game. I think the Supreme Court's slacked up on it if I'm not mistaken, your Honor.
THE COURT: Well, Mr. Ivy, do you want to give specific reasons for everybody for all of their challenges, or 
MR. IVY: If that is the Court's ruling, the State will give reasons.
THE COURT: Well, what I'm saying is you've heard Mr. Perkins response, and I think he is within his rights saying that if he has to give a race and gender neutral based reason for each one of his challenges, then he would expect the same from you. So, the question is, do you expect him to give a reason for each specific challenge?
MR. IVY: May I have just one moment to confer with my notes?
THE COURT: You may.
MR. IVY: Thank you.
MR. IVY: You Honor, the State would withdraw it's objection at this time and reserve it for later, if necessary.
Obviously, the issue was discussed at length and covered by defense counsel at trial. His choice not to follow through with a specific objection or force the issue when the State brought it to the trial court's attention was again within his discretion as part and parcel of trial strategy. An attorney's decision whether or not to make a Batson challenge falls within the trial counsel's wide latitude to plan trial strategy and appellate courts must defer unless the prongs of Strickland are met. Hall, 735 So.2d at 1128 (citing Strickland v. Washington, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). Again, Wilson fails to show any deficiency in trial counsel's performance much less how that deficiency resulted in prejudice to Wilson.

II. THE TRIAL COURT ERRED IN ALLOWING AN AUDIO TAPE RECORDING OF THE ALLEGED DRUG TRANSACTION INTO EVIDENCE.
¶ 11. Wilson next assails the trial court's decision to allow the audio tape recording of the alleged drug sale into evidence based upon failure of the State to properly authenticate the evidence. Wilson believes that Officer Bagley, the State's witness who authenticated the tape, failed to adequately explain how he could positively identify Wilson's voice as the one *740 orchestrating the cocaine sale. Authentication of evidence requires the offering party to lay a proper foundation. One way of laying this foundation is described in Mississippi Rules of Evidence 901(b)(5) which requires firsthand voice identification or identification through mechanical or electronic transmission, or recording by opinion based upon hearing the voice.
¶ 12. Once the evidence has been presented to the trial judge and satisfied as admissible under M.R.E. 401 and 901, it is within the trial court's wide discretion whether or not to admit it. Stromas v. State, 618 So.2d 116, 118 (Miss. 1993). The recording of an alleged drug transaction is certainly relevant as it's admission makes the drug transaction more likely to have taken place. Stromas, 618 So.2d at 118. Once determined relevant, the State must present evidence sufficient to support a finding that the matter in question is what its proponent claims. Id. at 118. Mississippi Rules of Evidence 901(b)(5) allows the State to prove that by opinion based upon hearing the voice at any time under the circumstances connecting it with the alleged speaker. M.R.E. 901(b)(5).
¶ 13. In the present case, Agent Bagley testified that he had eight or nine separate conversations with Wilson prior to this occasion and that some of those conversations lasted upwards of forty minutes. Bagley also testified that he spoke to Wilson only hours before the transaction that day. Agent Bingham testified further that he heard Wilson's voice on several occasions "over the body mic." Both of these witnesses qualify for authentication purposes as giving opinions based upon hearing the voice at any time under circumstances connecting it with the speaker.
¶ 14. Wilson's reliance on McDavid v. State, 594 So.2d 12 (Miss.1992) is misplaced. The McDavid Court held that the identification of the defendant by officers listening to short-wave transmissions was not sufficiently reliable to establish authenticity. Two distinguishing points separate McDavid from the case at bar. In McDavid, the supreme court noted that the transmission was unavailable to be heard by the jury and neither officer testifying for the State had ever heard the defendant's voice before the subject transaction. Here, the audio tape was available for the jury to consider, and both officers authenticating the tape were previously familiar with Wilson's voice. There was no error in admitting the tape into evidence.

III. DEFENDANT'S CONSTITUTIONAL RIGHT GUARANTEED BY THE "DOUBLE JEOPARDY" CLAUSE OF THE FIFTH AMENDMENT WAS VIOLATED BY PROSECUTING HIM FOR BOTH AIDING AND ABETTING IN THE SALE OF COCAINE AND FOR THE SALE OF COCAINE.
¶ 15. Wilson was tried on a multi-count indictment and convicted of both aiding and abetting Sandra Willis in the sale of cocaine and selling cocaine in concert with Sandra Willis although there was only one transaction. Wilson argues that these two counts were actually multiple indictments for a single offense. Wilson's trial counsel brought this error to the trial court's attention alleging a violation of the Double Jeopardy Clause of the Sixth Amendment. The trial judge overruled the objection saying he would examine the issue more closely when jury instructions were discussed. Unfortunately, it was never mentioned again.
¶ 16. In the context of multiple punishment, the double jeopardy bar applies if the two offenses for which the defendant is punished cannot survive the "same-elements" or Blockburger test. Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932). The Blockburger test inquires whether each offense contains an element not contained in the other; if not, they are the "same offense" within the Double Jeopardy Clause's meaning, and double jeopardy bars subsequent punishment or prosecution. *741 U.S. v. Dixon, 509 U.S. 688, 688, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993). The Mississippi Supreme Court has considered the issue of whether double jeopardy bars a multi-count indictment for a single offense. In discussing the United States Supreme Court decision of Ashe v. Swenson, our supreme court stated:
From a reading of the Ashe decision, it is clear that the proscription against double jeopardy was intended to prevent abuse of the criminal process in the form of multiple or vexatious prosecutions for a single offense. The Ashecourt held that the double jeopardy proscription was applicable for the charges which arose from a single transaction.
Wilcher v. State, 455 So.2d 727, 732 (Miss. 1984) (citing Ashe v. Swenson, 397 U.S. 436, 459, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970)). In the instant case, the evidence offered by the prosecution at trial was the same for both counts alleged against Wilson. The indictment under which Wilson was charged cites Mississippi Code § 41-29-139 (Rev.1993) as the only law violated by Wilson's conduct, but separates his conduct into two different charges. It is well settled that any person present at the commission of a criminal offense and aids, counsels, or encourages another in the commission of that offense is an "aider and abettor" and is equally guilty with the principal offender.Sayles v. State, 552 So.2d 1383, 1389 (Miss.1989).
¶ 17. Applying the facts of this case to the legal standards enumerated above, we hold that Count I of the indictment for aiding and abetting in the sale of cocaine is barred by double jeopardy. Therefore, this Court vacates Wilson's conviction and sentence for aiding and abetting in the sale of cocaine, but affirms the conviction and sentence of sale of cocaine. On a technical point, since we reverse and render the conviction and sentence given under Count I and the sentence given under Count II runs concurrently with the now vacated sentence in Count I, it would be theoretically impossible for Count II to ever begin to run. Recognizing this logistical fallacy, we remand Count II to the circuit court of Washington County for re-sentencing in accordance with the dictates of this opinion.
¶ 18. THE JUDGMENT OF THE CIRCUIT COURT OF WASHINGTON COUNTY ON COUNT I, AIDING AND ABETTING IN THE SALE OF COCAINE IS REVERSED, RENDERED AND THE SENTENCE IS VACATED. COUNT II, CONVICTION OF SALE OF COCAINE AND SENTENCE TO TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS REMANDED FOR RE-SENTENCING. FINE OF $5000 IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO WASHINGTON COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., IRVING, LEE, MOORE, PAYNE, AND THOMAS, JJ., CONCUR.