936 So.2d 945 (2006)
Kevin Michael SUBER, Appellant
v.
Kathleen Anne SUBER, Appellee.
No. 2004-CA-02451-COA.
Court of Appeals of Mississippi.
March 21, 2006.
Rehearing Denied August 22, 2006.
*946 William W. Dreher, Gulfport, attorney for appellant.
*947 Walter Wesley Teel, attorney for appellee.
Before MYERS, P.J., CHANDLER and GRIFFIS, JJ.
MYERS, P.J., for the Court:
¶ 1. After both parties stipulated to a divorce based upon irreconcilable differences, the Harrison County Chancery Court First Judicial District granted Kathleen Suber sole legal and physical custody of her two adopted children on November 5, 2004. Kevin Suber appeals to this Court the chancellor's ruling which denied him any contact with his adopted children, and the ruling which ordered him to pay monthly child support. Aggrieved by the order of the chancery court, Kevin appeals raising the following four issues:
I. WHETHER THE COURT COMMITTED MANIFEST ERROR AND ABUSED ITS DISCRETION IN REQUIRING KEVIN SUBER TO PAY AN EXCESSIVE AMOUNT IN CHILD SUPPORT WITHOUT ANY SUPPORTING EVIDENCE OF HIS ABILITY TO PAY.
II. WHETHER THE COURT ABUSED ITS DISCRETION AND WAS MANIFESTLY IN ERROR IN IGNORING THE FINDINGS OF THE GUARDIAN AD LITEM AND ESSENTIALLY TERMINATING KEVIN SUBER'S PARENTAL RIGHTS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.
III. WHETHER THE COURT ERRED AS A MATTER OF LAW IN ALLOWING KATHLEEN SUBER TO INVOKE A MEDICAL PRIVILEGE IN A CASE INVOLVING CHILD CUSTODY.
IV. WHETHER THE CHANCELLOR ERRED AS A MATTER OF LAW IN ALLOWING INTO EVIDENCE A CERTAIN DOCUMENT WITHOUT THE ASSISTANCE OF AN EXPERT WITNESS.
¶ 2. Finding no error, we affirm the chancery court's ruling.

FACTS
¶ 3. Kathleen and Kevin married in New York in 1989, and lived in California prior to moving to Mississippi. While in California they adopted a baby girl born January 22, 1993. After moving to Mississippi, they adopted a baby boy born on September 7, 1995. Kevin filed for divorce on July 8, 2002, in the Chancery Court of Harrison County, First Judicial District on the grounds of habitual cruel and inhuman treatment and adultery or, in the alternative, irreconcilable differences. Kathleen counter filed and asked for sole custody of the minor children. The court appointed a guardian ad litem for the children, Michael Hill. Hill reported that the children told him that Kevin had molested them; however, there was no physical evidence. Hill recommended that in the best interest of the children, Kathleen should have sole custody of the children and all contact between Kevin and the children should be stopped. The chancery court entered an order on October 17, 2003, suspending all visitation and contact of Kevin with the two minor children except by telephone. After this order was entered, Kevin continued to daily send postcards and letters to the children in violation of the court order. Some postcards were pictures of their biological families which had a detrimental effect on the children's emotions. Other postcards were about Kevin's acting and the glamorous life he was leading in California.
¶ 4. The parties agreed to a divorce on irreconcilable differences and stipulated for the court to decide on the matters relating to child support, custody and visitation. *948 The case went to trial in Harrison County Chancery Court on November 4, 2005. For two days, the chancellor heard testimony from numerous people including Kathleen, Kevin, and the two minor children. Both children testified to having been sexually abused by Kevin. Other witnesses testified to Kathleen being a good mother. No witness's testimony improved the view of Kevin's character. Testimony reflected that Kevin was not providing for his family, eating all the food in the house, eating his children's lunches on their way to school, placing them in the bath before testing the water temperature which was scalding and whipping the son with an electrical wire. Even Kevin's own testimony had a detrimental effect to his case. He admitted to not giving all his financial records to the court and to not abiding by the court's order regarding contacting his children.
¶ 5. On November 5, 2004, the chancellor did an analysis of the Albright factors and granted Kathleen sole legal and physical custody of the two minor children and prohibited Kevin from having any contact with his children. The court also ordered Kevin to pay child support for $250 a month for thirty days, then $300 per month for sixty days, then $350 per month until the end of six months and then start paying $500 every month. The court also ordered Kevin to pay back child support and Kathleen's attorney's fees.
I. WHETHER THE COURT COMMITTED MANIFEST ERROR AND ABUSED ITS DISCRETION IN REQUIRING KEVIN SUBER TO PAY AN EXCESSIVE AMOUNT IN CHILD SUPPORT WITHOUT ANY SUPPORTING EVIDENCE OF HIS ABILITY TO PAY.
¶ 6. The chancellor ordered Kevin to pay Kathleen child support in the amount of $250 per month for the first month, $300 for two months, then $350 per month until the end of six months, and then start paying $500 every month. Kevin argues that the chancellor did not follow the child support guidelines as set forth in the Mississippi Code, and therefore committed manifest error. It is within the chancellor's discretion to award child support, and this Court will not reverse that award unless the chancellor was manifestly wrong in the findings of fact or manifestly abused his discretion. Chesney v. Chesney, 910 So.2d 1057, 1060(¶ 5) (Miss.2005). The chancellor's awarding of child support is actually an exercise of fact finding; therefore, this Court's review is significantly restrained. Clausel v. Clausel, 714 So.2d 265, 267(¶6) (Miss.1998).
¶ 7. The guidelines of awarding child support are set out in § 43-19-103 of the Mississippi Code Annotated. The guidelines for two children is twenty percent of the adjusted gross income; however, if the income is more than $50,000 the court shall make a written finding in the record as to whether this amount is reasonable. Miss. Code Ann. § 43-19-101 (Rev.2004).
¶ 8. Kevin argues that $500 per month in child support is much more than twenty percent of his adjusted gross income. However, Kevin did not produce the needed financial records to determine his adjusted gross income. At trial, Kevin only produced two pay stubs and admitted to having others at home in California. It is wrong for the parents to hide income or to evade a complete assessment of income when child support is being considered. Stroud v. Stroud, 758 So.2d 502, 504(¶ 7) (Miss.Ct.App.2000). Where the chancellor is not convinced of honesty and openness of the parent, this may be a determining factor for proper consideration of the amount to award. Dunn v. Dunn, 695 So.2d 1152, 1157 (Miss.1997). Therefore, the statutory guidelines may be varied *949 upon proper finding of the court. Id. Kevin testified to having a college education and being qualified in numerous fields related to the financial world. Kevin also claims to be an accomplished actor; therefore, the chancellor had evidence that he is able to contribute. The chancellor can base child support on the parent's potential earning capacity. White v. White, 722 So.2d 731, 734(¶ 21) (Miss.Ct.App.1998). Therefore, we find that this issue is without merit.

II. WHETHER THE COURT ABUSED ITS DISCRETION AND WAS MANIFESTLY IN ERROR IN IGNORING THE FINDINGS OF THE GUARDIAN AD LITEM AND ESSENTIALLY TERMINATING KEVIN SUBER'S PARENTAL RIGHTS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.
¶ 9. Kevin argues that the chancellor erroneously disregarded the recommendations of the guardian ad litem and terminated his parental rights. However, Kevin is mistaken because the chancellor followed the recommendation of the guardian ad litem in determining which parent was to retain custody of these two minor children. This Court's standard of review in domestic relations cases is established and clear. Child custody matters fall within the sound discretion of the chancellor. Sturgis v. Sturgis, 792 So.2d 1020, 1023(¶ 12) (Miss.Ct.App.2001). Therefore, a chancellor's ruling will not be disturbed by this Court unless we find the trial court was manifestly wrong, clearly erroneous, or applied an erroneous legal standard. Cooper v. Ingram, 814 So.2d 166, 167(¶ 2) (Miss. Ct.App.2002).
¶ 10. The report of the guardian ad litem stated that the evidence is conflicting in this case. There is no physical evidence as to the physical abuse of the children; however, the abuse is the most important factor. If the abuse did occur then visitation would put the children in jeopardy, and if the molestation did not occur, forcing the children into visitation would be just as harmful because they believe the molestation occurred. Kevin requested an evaluation to determine if Kathleen has had a hand in alienating his children from him. The guardian ad litem stated that even if this is true, with him residing in California and Kevin and Kathleen's current financial situation, any type of treatment is not possible. The guardian ad litem went further to recommend that a change in custody could not be allowed without this type of treatment. The guardian ad litem stated that visitation would have the same effect on the children as a change in custody. Since the children are convinced the alleged abuse occurred, regardless if it is true or not, that belief is there which bars visitation and a change of custody.
¶ 11. The only way the chancellor deviated from the guardian ad litem's report was by ordering Kevin to pay child support, which the report stated was unfair. This deviation has nothing to do with child custody or parental rights; and furthermore, the Mississippi Supreme Court has stated that the father's duty to support his children is absolute. Pearson v. Hatcher, 279 So.2d 654, 656 (Miss.1973).
¶ 12. As to extinguishing parental rights, the court made no such ruling. The termination of child custody and visitation does not terminate parental rights by itself. In re T.A.P., 742 So.2d 1095, 1104(¶ 41) (Miss.1999). No one in this case filed a petition to terminate Kevin's parental rights.

III. WHETHER THE COURT ERRED AS A MATTER OF LAW IN ALLOWING KATHLEEN SUBER TO INVOKE A MEDICAL PRIVILEGE *950 IN A CASE INVOLVING CHILD CUSTODY.
¶ 13. Kevin argues that Reverend Blair Bradley should have been allowed to testify to Kathleen's mental state, since he has counseled both Kevin and Kathleen in the past, under the M.R.E. 503(d)(4), exception to the medical privilege. The standard of review for both the admission or exclusion of evidence is abuse of discretion. Harrison v. McMillan, 828 So.2d 756, 765 (¶ 27) (Miss.2002). Even if this Court finds an erroneous admission or exclusion of evidence, we will not reverse unless the error adversely affects a substantial right of a party. Gibson v. Wright, 870 So.2d 1250, 1258(¶ 28) (Miss. Ct.App.2004).
¶ 14. Mississippi Rules of Evidence 503(d)(4), allows medical testimony in when it is relevant to child custody. However, this rule only pertains to physicians and psychotherapist, and Bradley is neither authorized to practice medicine nor licensed or certified as a psychologist. This privilege would fall under M.R.E. 505, the priest penitent privilege, which states that a person has a privilege to refuse to discuss and to prevent others from disclosing confidential communications with a clergyman and does not contain the same exception as M.R.E. 503. This is certainly the case here. Kathleen objected to Bradley disclosing her confidential communications with him since he was her preacher. Therefore, this issue has no merit.

IV. WHETHER THE CHANCELLOR ERRED AS A MATTER OF LAW IN ALLOWING INTO EVIDENCE A CERTAIN DOCUMENT WITHOUT THE ASSISTANCE OF AN EXPERT WITNESS.
¶ 15. Kevin kept a journal for the class which he attended for children of alcoholics. He argues that it was error for the chancellor to allow Kathleen to introduce this journal into evidence without expert testimony in violation of M.R.E. 702. The standard of review for both the admission or exclusion of evidence is abuse of discretion. Harrison v. McMillan, 828 So.2d 756, 765(¶ 27) (Miss.2002).
¶ 16. In this journal Kevin discusses his past sexual problems. Mississippi Rules of Evidence 401 defines relevant evidence as evidence which makes the determination of the action more probable or less probable than without the evidence. If the evidence has any probative value, the rule favors admission. Williams v. State, 543 So.2d 665, 667 (Miss.1989). This journal discussed Kevin's sexual history which was relevant in the present case. Once the relevancy is established then the evidence must be authenticated. Wilson v. State, 775 So.2d 735, 740(¶ 11) (Miss.Ct.App. 2000). Since Kevin admitting that the journal belonged to him containing his own handwriting, this satisfies the authentication requirement of M.R.E. 901. Admission of evidence under M.R.E. 401, once authenticated in accordance with M.R.E. 901, is left to the discretion of the trial court. Id. at 739(¶ 12). The chancellor did not abuse his discretion by not requiring an expert to testify in order to admit this journal into evidence; lay witness authentication was sufficient. We, therefore, find this issue meritless.
¶ 17. THE JUDGMENT OF THE HARRISON COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE TAXED TO THE APPELLANT.
KING, C.J., LEE, P.J., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE, ROBERTS, JJ., CONCUR. SOUTHWICK, J., NOT PARTICIPATING.