*283
 
 IRVING, J.,
 

 for the Court.
 

 ¶ 1. Cyprianna and Terry Swiderski were granted a divorce on the ground of irreconcilable differences by the Oktibbeha County Chancery Court. The chancellor awarded primary custody of the parties’ minor children to Cyprianna, ordered Terry to pay child support, and divided the marital estate. Aggrieved, Terry appeals and alleges (1) that the chancellor erred in refusing to issue findings of fact to support his legal conclusions, (2) that the chancellor erred in awarding primary custody of the children to Cyprianna, (3) that the chancellor erred in awarding inadequate visitation, (4) that the chancellor erred in basing the child support award on Terry’s earning potential, (5) that the chancellor erred in his division of the marital estate, and (6) that the chancellor erred in refusing to award Terry alimony.
 

 112. Finding no reversible error, we affirm.
 

 FACTS
 

 ¶ 3. Cyprianna and Terry were married on August 15, 1992. At the time of their marriage, Terry and Cyprianna were equestrian veterinarians. Terry had a veterinary practice in Magnolia, Mississippi, and Cyprianna was finishing her Ph.D. program at Louisiana State University. Three children were born to the marriage.
 

 ¶ 4. During their marriage, the parties moved several times from Mississippi. At times, Cyprianna and the children would be in one city or state, and Terry would be in another. In 2004, the parties moved to Starkville, Mississippi. Cyprianna became employed with Mississippi State University, and Terry started a part-time veterinary practice that required him to travel extensively. Cyprianna secured temporary staff housing for the family on the university’s campus. The parties purchased a house on Highway 12 in Stark-ville with the intention of remodeling and making it the family home.
 

 ¶ 5. On June 22, 2006, the parties separated, and Terry filed for divorce. He requested child custody, child support, alimony, and an equitable division of the marital estate. On August 25, 2006, the chancellor, in a temporary order, awarded Cyprianna primary physical custody of the minor children. He also ordered her to maintain health insurance for the children and to pay seventy-five percent of the mortgage on the Highway 12 property. The chancellor ordered Terry to pay the remaining twenty-five percent of the mortgage as rent, since he took up residence there after the parties separated.
 

 ¶ 6. The parties were granted a divorce on December 29, 2006. On April 24-25, 2007, a hearing was held on the issues of child custody, child support, visitation, division of the marital estate, alimony, and attorney’s fees.
 

 ¶ 7. The chancellor found that it was in the children’s best interest for Cyprianna to have primary physical custody and for Terry to have standard visitation. Further, the chancellor ordered Terry to pay $750 per month for child support. In regard to the division of the property, the chancellor awarded Terry assets valued at $181,322.21 and awarded Cyprianna assets valued at $166,548.09. The chancellor held that Terry was not entitled to alimony, and both parties were ordered to pay their own attorney’s fees.
 

 ¶ 8. Terry filed a motion urging the chancellor to amend his judgment by making additional findings of fact and legal conclusions. The chancellor overruled this motion. Additional facts, as necessary, will be related during our analysis and discussion of the issues.
 

 
 *284
 
 ANALYSIS AND DISCUSSION OF THE ISSUES
 

 ¶ 9. Terry argues that the chancellor erred in refusing to make additional findings of fact and conclusions of law as requested by him in his posttrial motion. Additionally, Terry argues that the chancellor erred in essentially every finding and conclusion that he reached, namely: child custody, visitation, child support, division of property, and alimony.
 

 ¶ 10. “Where a[c]hancellor has applied the correct legal standard and made findings of fact which are supported by substantial evidence, [the appellate court] will not reverse [the] decision.”
 
 In re Custody of M.A.G.,
 
 859 So.2d 1001, 1004(¶ 8) (Miss.2003) (citing
 
 Touchstone v. Touchstone,
 
 682 So.2d 374, 377 (Miss.1996)). “We will not reverse the chancellor’s ‘factual findings where there is substantial evidence in the record supporting these findings of fact.’”
 
 J.P. v. S.V.B.,
 
 987 So.2d 975, 979(¶ 7) (Miss.2008) (quoting
 
 Floyd v. Floyd,
 
 949 So.2d 26, 28(¶ 5) (Miss.2007)).
 

 1. Denial of Motion to Amend
 

 ¶ 11. After the conclusion of the trial, Terry filed a document entitled “MRAP Rule 4(d) and MRCP Rules 52 and 59 Motions.”
 
 [1]
 
 In this pleading, Terry requested that the chancellor “reconsider [his] August 2, 2007, Judgment and amend it by making additional findings and legal conclusions.” Terry suggested additional findings and legal conclusions that favored him on each issue. The chancellor denied Terry’s motion.
 

 ¶ 12. Rule 52(a) of the Mississippi Rules of Civil Procedure states:
 

 In all actions tried upon the facts without a jury the court may, and shall upon the request of any party to the suit or when required by these rules, find the facts specially and state separately its conclusions of law thereon and judgment shall be entered accordingly.
 

 Essentially, “[this rule] vests in the trial court discretion whether findings of fact and conclusions of law should be made, absent ... a request of a party.”
 
 Tricon Metals & Servs., Inc. v. Topp,
 
 516 So.2d 236, 239 (Miss.1987). However, the Mississippi Supreme Court also has held that a trial court has technically complied with the mandate of Rule 52 where it makes general findings of fact and conclusions of law, even though a party has made a request for specific findings.
 
 Century 21 Deep S. Props., Ltd. v. Corson,
 
 612 So.2d 359, 367 (Miss.1992).
 

 ¶ 13. For each issue, the chancellor made findings of fact while addressing the applicable legal considerations. For child custody, the chancellor addressed each
 
 Al-bright
 
 factor
 
 [2]
 
 in detail to determine what was in the children’s best interests. In determining the division of the marital assets, the chancellor addressed each
 
 Ferguson
 
 factor.
 
 [3]
 
 In determining whether to award alimony, the chancellor stated that he had considered “every
 
 Armstrong
 
 factor
 
 [4]
 
 except fault or misconduct and [had]
 
 *285
 
 made findings of fact concerning those factors in [his] discussion of property division or child support.” The chancellor encouraged the parties to agree on Terry’s visitation with the children but put in place a standard visitation schedule for the parties should they not be able to agree.
 

 ¶ 14. The chancellor denied Terry’s requests to make further findings of fact and conclusions of law. We find that he did not err, as he had already made particularized findings of fact and conclusions in his fourteen-page judgment of divorce. Therefore, this contention of error is without merit.
 

 2. Child Custody
 

 ¶ 15. In matters involving a chancellor’s award of child custody, the appellate court’s standard of review is limited.
 
 J.P.,
 
 987 So.2d at 978-79(¶ 7) (citing
 
 Floyd v. Floyd,
 
 949 So.2d at 28(¶ 5)).
 

 ¶ 16. In
 
 Albright,
 
 437 So.2d at 1005, the Mississippi Supreme Court determined that the “polestar consideration in child custody cases is the best interest and welfare of the child” and set out several factors relevant to that determination: the age of the child; the health of the child; the sex of the child; continuity of care for the child prior to the separation; parenting skills; employment of the parent; the physical and mental health and the age of the parent; moral fitness of the parent; the home, school, and community record of the child; the preference of the child of sufficient age to express a preference; stability of home environment and employment of the parent; and other factors relevant to the parent-child relationship.
 

 ¶ 17. Terry argues that the chancellor erred in awarding primary custody of the children to Cyprianna in light of the
 
 Al-bright
 
 factors. Specifically, Terry argues that he should have been favored in the eight factors the chancellor found to be neutral.
 

 ¶ 18. “It is the role of the chancellor to ascertain whether witnesses and evidence are credible and the weight to give each.”
 
 Robison v. Lanford,
 
 841 So.2d 1119, 1122(¶ 9) (Miss.2003) (citing
 
 Chamblee v. Chamblee,
 
 637 So.2d 850, 860 (Miss.1994)). The chancellor addressed each
 
 Albright
 
 factor and determined whom each factor favored after considering the testimonies of the witnesses and the evidence. We find that the chancellor applied the correct legal standard and that there is sufficient evidence in the record to support his findings. Therefore, this contention of error is also without merit.
 

 3. Visitation
 

 ¶ 19. On visitation issues, the chancery court enjoys considerable discretion in making its determination of what is in the best interest of the child.
 
 Haddon v. Haddon,
 
 806 So.2d 1017, 1020(¶ 12) (Miss.2000) (citing
 
 Harrell v. Harrell,
 
 231 So.2d 793, 797 (Miss.1970)). Further, “[t]he specification of times for visitation rights is [also within] the broad discretion of the chancellor.”
 
 Id.
 
 (citing
 
 Cheek v. Ricker,
 
 431 So.2d 1139, 1146 (Miss.1983)).
 

 ¶ 20. Terry argues that the chancellor erred in ordering alternate weekend visitation. He cites
 
 Cox v. Moulds,
 
 490 So.2d 866, 869 (Miss.1986) which states that “[a]ll that need be shown is that there is a prior decree providing for reasonable visitation rights which isn’t working and that it is in the best interests of the children as fostering a positive and harmonious relationship between them and their divorced parents to have custody provisions made specific rather than flexible and attendantly vague.” In his brief, Terry states:
 

 
 *286
 
 [ T]he court again encouraged Terry and [Cyprianna] to agree to Terry’s visitation considering their respective schedules but if not, then Terry had specified visits as outlined. This ruling basically mirrored the court’s “Temporary Order” which was overwhelmingly shown unworkable since Cyprianna unilaterally decided that only the minimum visitation would be allowed.... Apparently, the [c]ourt believes that having repeated [that] the parties are encouraged to agree to other visitation that Cyprianna will now do right by the children.
 

 ¶ 21. In accordance with
 
 Cox,
 
 Terry would have to show that the visitation schedule ordered by the chancellor is not working and that the provisions are flexible or vague. However, Terry does not allege that the visitation schedule is not working or that it is too vague; rather, he alleges that Cyprianna only allowed him to have “minimum” visitation with the children. The chancellor gave Terry and Cyprianna two options regarding the visitation with the children: (1) they could agree to come up with their own visitation schedule, or (2) they would follow a specific standard visitation schedule implemented by the chancellor. Apparently, the parties could not agree on their own visitation schedule; therefore, Cyprianna abided by the visitation schedule ordered by the chancellor.
 

 ¶ 22. The visitation schedule ordered by the chancellor is in accordance with
 
 Cox,
 
 as it is specific. Further, we find that the visitation schedule falls within the range of discretion afforded the chancellor. Therefore, this contention of error is without merit.
 

 A
 
 Child Support
 

 ¶ 23. The findings of fact of the chancery court, particularly in the area of child support, will generally not be overturned by an appellate court on appeal unless they are manifestly wrong, clearly erroneous, or an incorrect legal standard was applied.
 
 Barton v. Barton,
 
 790 So.2d 169, 176(¶ 17) (Miss.2001).
 

 ¶ 24. Terry argues that the chancellor committed manifest error when he based the amount of the child support on Terry’s potential earning capacity instead of the financial declaration that he presented to the court. He further argues that the chancellor calculated his earning potential by using speculative testimony.
 

 ¶ 25. It is well settled that an obligor’s financial position cannot be voluntarily worsened in an attempt to lessen his child support obligation.
 
 Parker v. Parker,
 
 645 So.2d 1327, 1331 (Miss.1994). Where a chancellor is not convinced of the honesty or veracity of the parent concerning the parent’s ability to abide by his or her financial obligations, the chancellor is not precluded from factoring this skepticism in the equation when determining the amount of the child support award.
 
 Dunn v. Dunn,
 
 695 So.2d 1152, 1156-57 (Miss.1997);
 
 see also Grogan v. Grogan,
 
 641 So.2d 734, 741 (Miss.1994). Furthermore, “[t]he chancellor can base child support on the parent’s potential earning capacity.”
 
 Suber v. Suber,
 
 936 So.2d 945, 949 (¶ 8) (Miss.Ct.App.2006) (citing
 
 White v. White,
 
 722 So.2d 731, 734 (¶ 21) (Miss.Ct.App.1998)).
 

 ¶ 26. Here, the chancellor found that Terry was not truthful in the representations that he made in his Rule 8.05 financial statement.
 
 [5]
 
 In reaching this conclusion, the chancellor stated in his order:
 

 
 *287
 
 Terry’s Rule 8.05 financial statement states that his adjusted monthly income is $1,633.00. The Court believes that Terry has grossly underestimated his income. Exhibit D4, Terry’s 2006 tax return, shows that Terry has had gross receipts of $156,685.00. He also had taxable interest of $1,669.00 which shows that he has as much as $20,000.00 in taxable savings accounts. The Court believes that Terry is capable of earning at least $3,750.00 per month adjusted gross income and therefore sets his child support at $750.00 per month....
 

 ¶27. In addition to reviewing the tax return and financial declaration mentioned in the chancellor’s order, we also reviewed several deposit slips from Terry’s business checking account submitted at trial by Cyprianna. Keeping in mind that Terry claimed on his financial declaration that his monthly gross income was $2,300, we totaled up the deposit slips submitted by Cyprianna to reflect the following monthly totals:
 
 [6]
 

 February 2007 $10,600.00
 

 January 2007 $ 2,866.00
 

 December 2006 $ 7,702.15
 

 November 2006 $ 5,623.00
 

 October 2006 $ 3,736.50
 

 September 2006 $ 8,051.50
 

 August 2006 $ 6,385.00
 

 July 2006 $ 6,701.00
 

 ¶ 28. The deposit slips themselves represent that Terry grossed well over $2,300 per month for eight consecutive months. Therefore, we find that the chancellor’s determination of Terry’s earning potential was not based on speculation, as there was substantial evidence presented to the court that proved that Terry’s gross income greatly exceeded $2,300 per month. This issue is without merit.
 

 5. Equitable Distribution
 

 ¶ 29. In a divorce case, an appellate court employs a limited standard of review of a chancellor’s order for the division and distribution of the marital estate.
 
 Bowen v. Bowen,
 
 982 So.2d 385, 393(¶ 32) (Miss.2008) (citing
 
 Owen v. Owen,
 
 928 So.2d 156, 160(¶ 10) (Miss.2006)). “[T]he chancellor’s division and distribution will be upheld if it is supported by substantial credible evidence.”
 
 Id.
 
 at 394(¶ 32) (quoting
 
 Carrow v. Carrow,
 
 642 So.2d 901, 904 (Miss.1994)). “The ‘chancery court has authority, where equity demands, to order a fair division of property accumulated through the joint contributions and efforts of the parties.’ ”
 
 Owen,
 
 928 So.2d at 160(¶ 10) (quoting Savelle
 
 v. Savelle,
 
 650 So.2d 476, 479 (Miss.1995)). Even if the appellate court disagrees with the chancery court’s findings of fact and conclusions of law, the appellate court will not substitute its judgment for that of the chancery court.
 
 Bowen,
 
 982 So.2d at 394 (¶ 32) (citing
 
 Owen v. Owen,
 
 798 So.2d 394, 397-98(¶ 10) (Miss.2001)).
 

 ¶ 30. As previously noted, the Mississippi Supreme Court in
 
 Ferguson
 
 established a list of factors that should be considered when determining the equitable distribution of marital property.
 
 [7]
 

 Fergu
 
 
 *288
 

 son,
 
 639 So.2d at 928. Terry asserts that the chancellor erred in dividing the marital estate. He specifically argues that a proper analysis of the evidence indicates that several factors disfavor Cyprianna and that the chancellor should have made the proper findings in accordance with the evidence on each factor. Terry further asserts that the chancellor incorrectly evaluated the marital property and that utilizing Terry’s evaluation would have resulted in Terry having total assets valued at $72,913.25 and Cyprianna having total assets valued at $133,981.34, leaving him a deficit of $61,068.09.
 

 ¶ 31. As mentioned above, it is the chancellor’s role to “ascertain whether witnesses and evidence are credible and the weight to give each.”
 
 Robison,
 
 841 So.2d at 1122(¶ 9). The chancellor weighed the evidence, evaluated the assets of the marital estate, and made the following awards: assets to Terry that were valued at $181,322.11 and assets to Cyprianna that were valued at $166,548.08, leaving Cypri-anna a deficit of $14,774.03. We find no error in the chancellor’s refusal to accept Terry’s evaluations.
 

 ¶ 32. In addition to his argument that the chancellor incorrectly evaluated the marital estate, it appears that Terry also argues that the marital estate should have been equally divided instead of being equitably divided. In
 
 Hensarling v. Hensarling,
 
 824 So.2d 583, 590 (¶¶ 20-21) (Miss.2002), the Mississippi Supreme Court discussed the significant difference between equitable distribution states and community property states:
 

 Equitable distribution does not always mean an equal division of property. Mississippi is not a community property state.
 
 Chamblee v. Chamblee,
 
 637 So.2d 850, 863-64 (Miss.1994);
 
 Dillon v. Dillon,
 
 498 So.2d 328, 330 (Miss.1986);
 
 Rives v. Rives,
 
 416 So.2d 653, 657 (Miss.1982). The community property system and Mississippi’s system of equitable division are very dissimilar. In a community property state, the court may not look at the background of the marriage and/or the behavior of the married couple to decide what would constitute a just distribution of property. Instead the law in a community property state mandates an even division of all marital property, regardless of each parties’ respective contributions. Under the system of equitable distribution, the courts in Mississippi are not so inhibited. “The matter rather is committed to the discretion and conscience of the Court, having in mind all of the equities and other relevant facts and circumstances.”
 
 Chamblee,
 
 637 So.2d at 864 (citing
 
 Brown v. Brown,
 
 574 So.2d 688, 691 (Miss.1990)). This Court’s holdings in the aforementioned cases show that the chancellor’s discretion in the area of equitable distribution is exceedingly broad and he “has the flexibility to do what
 
 *289
 
 equity and justice requires.”
 
 Chamblee,
 
 637 So.2d at 864.
 

 ¶ 33. We find that the chancellor did not err in determining the value of the marital assets and in dividing the assets. Accordingly, this contention of error is also without merit.
 

 6. Alimony
 

 ¶ 34. “Alimony awards are also within the discretion of the chancellor, and his discretion will not be reversed on appeal unless the chancellor was manifestly in error in his findings of fact and abused his discretion.”
 
 Ethridge v. Ethridge,
 
 648 So.2d 1143, 1145-46 (Miss.1995) (quoting
 
 Armstrong v. Armstrong,
 
 618 So.2d 1278, 1280 (Miss.1993)). “In the case of a claimed inadequacy or outright denial of alimony, we will interfere only where the decision is seen as so oppressive, unjust or grossly inadequate as to evidence an abuse of discretion.”
 
 Armstrong,
 
 618 So.2d at 1280 (citing
 
 McNally v. McNally,
 
 516 So.2d 499, 501 (Miss.1987);
 
 Martin v. Martin,
 
 271 So.2d 391, 394 (Miss.1972)).
 

 ¶ 35. Terry asserts that he should have at least been awarded lump sum or rehabilitative alimony. However, “[ajlimony is considered only after the marital property has been equitably divided and the chancellor determines one spouse has suffered a deficit.”
 
 Lauro v. Lauro,
 
 847 So.2d 843, 848(¶ 13) (Miss.2003). To assist the chancellor in making the determination as to whether an award of alimony is appropriate, the chancellor is required to consider the
 
 Armstrong
 
 factors.
 
 [8]
 

 Armstrong,
 
 618 So.2d at 1280. Here, the chancellor stated in his order that “the [c]ourt has considered every
 
 ‘Armstrong
 
 factor’ except fault or misconduct and [has] made findings of fact concerning those factors.... ” After considering the
 
 Armstrong
 
 factors, the chancellor concluded that Terry was not entitled to alimony. Since Terry did not suffer a deficit after the chancellor equitably divided the marital property, we cannot find that the chancellor abused his discretion in denying him an award of alimony. Therefore, this contention of error is without merit.
 

 ¶ 36. THE JUDGMENT OF THE OK-TIBBEHA COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 KING, C.J., LEE AND MYERS, P.JJ., GRIFFIS, BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR.
 

 [1]
 

 . On appeal, Terry argues that this document was a motion pursuant to Rule 52 of the Mississippi Rules of Civil Procedure. Therefore, we analyze this issue pursuant to the requirements of Rule 52.
 

 [2]
 

 . In
 
 Albright v. Albright,
 
 437 So.2d 1003, 1005 (Miss.1983), the Mississippi Supreme Court established a list of factors relevant to a determination of a child’s best interest in custody matters.
 

 [3]
 

 . In
 
 Ferguson v. Ferguson,
 
 639 So.2d 921, 928 (Miss.1994), the Mississippi Supreme Court established a list of factors to be considered by chancellors when determining equitable distribution of marital property.
 

 [4]
 

 . In
 
 Armstrong v. Armstrong,
 
 618 So.2d 1278, 1280 (Miss.1993), the Mississippi Supreme Court established a list of factors to be consid
 
 *285
 
 ered by chancellors when determining the appropriateness of an alimony award.
 

 [5]
 

 . Rule 8.05 of the Uniform Chancery Court Rules requires all parties in domestic cases to file a financial disclosure statement.
 

 [6]
 

 . The record does not reflect whether the deposit slips submitted by Cyprianna represented all of the deposits that Teriy had made or whether these were the only ones that she had evidence of. Also, there are two undated deposit slips, totaling $3,316 which are not reflected in these totals.
 

 [7]
 

 . These factors stated generally are:
 

 (1) Substantial contribution to the accumulation of the property which includes: (a) Direct or indirect economic contribution to the acquisition of the property; (b) Contribution to the stability and harmony of the marital and family relationships as measured by quality, quantity of time spent on family duties, and the duration of the marriage; (c) Contribution to the education, training, or other accomplishment bearing on the earning power of the spouse accumulating the assets; (2) The degree to
 
 *288
 
 which each spouse, has expended, withdrawn, or otherwise disposed of marital assets and any prior distribution of such assets by agreement, decree, or otherwise; (3) The market value and the emotional value of the assets subject to distribution; (4) The value of assets not ordinarily, absent equitable factors to the contrary, subject to distribution, such as properly brought to the marriage by the parties and property acquired by inheritance or inter vivos gift by or to an individual spouse; (5) Tax and other economic consequences to third parties, of the proposed distribution; (6) The extent to which property division may, with equity to both parties, be utilized to eliminate periodic payments and other potential sources of future friction between the parties; (7) The needs of the parties for financial security with due regard to the combination of assets, income, and earning capacity; and (8) Any other factor which in equity should be considered.
 

 [8]
 

 . These factors include:
 

 (1) The income and expenses of the parties; (2) The health and earning capacities of the parties; (3) The needs of each party; (4) The obligations and assets of each party; (5) The length of the marriage; (6) The presence or absence of minor children in the home, which may require that one or both of the parties either pay, or personally provide, child care; (7) The age of the parties; (8) The standard of living of the parties, both during the marriage and at the time of the support determination; (9) The tax consequences of the spousal support order; (10) Fault or misconduct; (11) Wasteful dissipation of assets by either party; or (12) Any other factor deemed by the court to be “just and equitable” in connection with the setting of spousal support.