IN THE SUPREME COURT OF MISSISSIPPI
NO. 94-CA-00795-SCT

*MICHAEL HOSEA DUNN*

*v.*

*DANNE CAROLE DUNN*

| | |
|---|---|
| DATE OF JUDGMENT: | 07/08/94 |
| TRIAL JUDGE: | HON. WILLIAM H. MYERS |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | GARY L. ROBERTS |
| ATTORNEY FOR APPELLEE: | EARL L. DENHAM |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED - 6/12/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 7/3/97 |

**BEFORE DAN LEE, C.J., McRAE AND SMITH, JJ.**

**McRAE, JUSTICE, FOR THE COURT:**

¶1. Here we are asked to consider whether the chancellor below abused his discretion by upholding, after remand from this Court for reconsideration, a previous order for a father to pay child support. Because we find that the chancellor below had substantial evidence to support his decision not to follow statutory guidelines for awarding child support, we affirm the chancellor's decision.

**I.**

¶2. This appeal arises from the Chancery Court of Jackson County, where Chancellor William Myers refused to decrease the amount of child support paid by Michael Hosea Dunn (Michael) to Danne Carol Dunn (Danne) on behalf of their two children, Ashley and Matthew. Danne and Michael married in Jackson County, Mississippi, on September 13, 1981, and this union bore two children, Ashley and Matthew. From a previous relationship, Michael also has a son, Kelly, and a daughter, Amy. The original divorce decree for the Dunns was entered on June 13, 1991 by Chancellor Robert H. Oswald. The chancellor there granted custody of Michael and Danne's two children to Danne. Danne was also awarded equitable liens against the marital homestead, Michael's business, and a jointly owned commercial lot. The chancellor required Michael to pay child support, along with the

note, taxes, and insurance on the home, because the proceeds from the home mortgage had been used for his business.

¶3. Michael appealed the initial divorce judgment to this Court on June 14, 1991. On December 10, 1992, this Court affirmed the final judgment on all issues except child support, where we reversed and remanded. *Dunn v. Dunn (Dunn I)*, 609 So. 2d 1277, 1286 (Miss. 1992). Before we handed down *Dunn I* though, on June 19, 1992, Michael filed a petition to modify the divorce decree, which alleged that a material change in circumstances had occurred. By the time a hearing was convened, Chancellor Oswald had returned to private practice. On November 23, 1992, Chancellor Myers conducted a hearing on the petition in which Michael and Danne presented testimony and evidence in support of their respective claims. At this November hearing, the parties agreed to accept a sale of their jointly owned commercial lot for $35,000, to be used to reduce the principal amount of the second mortgage on the marital homestead. Michael also claimed that he could not afford to pay for child support, house notes, taxes and insurance. Contrastingly, Michael gave testimony that he took money from his business, Mike Dunn Auto Sales, to cover his personal bills and expenses, which he never reported as income. Eventually, he depleted the funds of the business, sold all but one of the automobiles in his inventory, and closed the business. Michael testified that he had moved out of his own rental home because of his inability to pay the rent and moved in with his father in August of 1992.

¶4. Michael did not inform Danne that he was closing the business, but he indicated that he told her that he was not going to meet his obligations for very long. After he closed Mike Dunn Auto Sales, Michael began working for his father, making $1500 to $1600 per month. Michael blamed the closing of the business on his continuous loss of money, which was caused by the combination of a poor economy and the presence of new car dealers. Danne received none of the proceeds from the liquidation of the business. When asked to explain how his pay from his father's business was determined, Michael responded that it was based upon commissions and fees for buying, selling, and detailing cars.

¶5. Although Michael listed the monthly note of $1500 for the second mortgage on the marital homestead as his expense on his financial declaration, the payments were made from the funds deposited with the court after the sale of the commercial property by Michael and Danne; Michael himself actually made only two payments. Michael also listed a $100 per month payment for taxes on the house, but he later testified at a July 1993 hearing that he was not paying the taxes. Rather, he stated that the money came from the funds deposited with the court. Michael believed that since the funds were coming from the proceeds of the sale a lot that he and Danne had jointly owned, he was paying for the taxes. The tax payments came out of the deposited fund however, not from Michael's personal income.

¶6. The financial declarations by Michael for the November 23, 1992, hearing indicate that Michael's gross monthly income was at least $1500, while his total monthly expenses were $3769.26. For Danne, the situation was just as bad, with gross monthly income of $2025 (net $1077), and total monthly expenses of $1638.

¶7. On December 22, 1992, the chancellor ordered both parties to apply proceeds from the sale of the jointly owned commercial lot to reduce the principal of the second mortgage on the house. In

addition, due to the amount of time that passed between the November 1992 hearing and this Court's ruling on December 10,1992, the chancellor ordered another hearing, scheduled for July 6, 1993, to supplement the testimony and evidence.

¶8. In the interim, on January 7, 1993, the chancellor canceled Danne's lien of $20,000 against the commercial lot, ordering her and Michael to place the sales proceeds in the county registry. After discovering that Michael had not paid taxes on the house for three years, Danne filed a motion to reconsider on January 21, 1993, seeking the court's allowance of part of the sale proceeds of the lot to be utilized to pay the past due taxes on the house. On February 26, 1993, the chancellor agreed to distribute part of the proceeds to pay past due taxes of $3415.18 and $4500 in overdue notes on the house, which Michael also had failed to pay. On June 7, 1993, the chancellor granted an emergency *ore tenus* motion where the parties sought disposition of $4500 in sales proceeds to prevent foreclosure on the house.

¶9. At the July 6, 1993, hearing, Michael testified that his gross monthly income had increased somewhat, to $1550. Michael claimed a debt to his father, but he did not testify that he was making any payments on it at the time of either hearing. There is no promissory note or other paper to provide for the repayment of this debt, and Michael's father was not called to provide corroborative proof of the existence of the debt. Michael testified then that he lived with his new wife in her house[1] and that he does not pay rent or a mortgage note. His claimed payments for food, telephone, medical, dental and television expenses increased between the hearing on November 23, 1992, and the hearing on July 6, 1993.

¶10. Michael was also paying at least $611 per month on behalf of his son Kelly, for school, car note and car insurance. In the November 1992 hearing, Michael testified that he could not continue to pay for Kelly's expenses; however, at the July 1993 hearing, Michael testified that he was paying those expenses, incidentally, at the cost of not paying the house note and taxes on the marital homestead, as had been required in the divorce decree. Regarding the child support payments for Ashley and Matthew, as of July 1993, Michael was in arrears $845. Between the November and July hearings, Michael also ceased paying the $149.50 per month for his other daughter, Amy, to attend college, since she had not decided where she was going at the time. Michael currently has the obligation of paying half of the medical and dental expenses for Ashley and Matthew that Danne's insurance does not cover, but he is under no legal obligation to pay any support for Amy or Kelly.

¶11. On August 9, 1993, the chancellor granted a second emergency *ore tenus* motion allowing the parties disposition of an additional $3,000 for payment on the second mortgage. On September 20, 1993, the chancellor denied Michael's requests for relief, based on, among other things, his findings that Michael intentionally caused the actions that led to the deterioration of his business and that Michael took a job with his father in an attempt to reduce his obligations under the divorce decree. On October 18, 1993, the chancellor affirmed his previous judgment except as to an injunction issued against Michael which related to his girlfriend. The chancellor further awarded Danne the funds remaining in the registry of the court.

¶12. After a hearing on Michael's motion to reconsider, Chancellor Myers affirmed the judgment of the chancellor in the original proceeding and entered his opinion on January 25, 1994. In doing so, the chancellor addressed Michael's concerns regarding the issues of child support and found that the

child support originally ordered by the chancellor was reasonable. The chancellor found that the guidelines were not applicable in this case based upon a change in circumstances since the first trial, the age of the children, the expenses of raising the children, and the chancellor's inability to believe Michael in regard to his financial circumstances. The chancellor entered final judgment on July 8, 1994, and it is from this judgment that Michael appeals.

## II.

¶13. The question presented is whether the trial court manifestly erred or abused its discretion in refusing to lower the appellant's child support obligation on remand, after rehearing. "On appeal this Court will not reverse a Chancery Court's findings, be they of ultimate fact or of evidentiary fact, where there is substantial evidence supporting those findings. Unless the Chancellor's determination of fact is manifestly wrong, this Court will uphold his decision." *Dunn v. Dunn*, 609 So. 2d 1277, 1283 (Miss. 1992)(citations omitted).

¶14. The mandate issued by an appellate court is binding on the trial court on remand. *Simpson v. State Farm Fire and Casualty Co.*, 564 So. 2d 1374, 1380 (Miss. 1990). Where this Court has already decided a specific issue in a case on a prior appeal, the trial court has been found to be in error where, on remand, it has refused to follow this Court's opinion and directions. *Phillips Petroleum Co. v. Stack*, 246 So. 2d 546, 548 (Miss. 1971).

¶15. This Court, in the previous appeal of this case, noted that

> [t]hough there are probably expenses listed by each party which could be reduced or done away with entirely, support of these two households will not be easy on the incomes reported. Payment of the amount of child support awarded is impossible based on the figures presented. In light of the financial resources apparently reasonably available, the chancellor erred. We therefore reverse and remand for a new hearing on the issue of child support.

*Dunn I*, 609 So. 2d at 1286.

¶16. We find persuasive the argument by the appellee that the "law of the case" doctrine is not entirely applicable. *Dunn I* is a directive from this Court for the lower court to conduct a new hearing on child support. Although this Court remanded for a new hearing on child support, this Court did not decide the primary and controlling issue of the lower case. We determined that, *based on the figures presented*, it was impossible for Michael to pay the child support awarded in the first Dunn divorce.

¶17. Further, the chancellor followed our directive by conducting two hearings to receive testimony and further evidence. When Michael made a motion to modify the divorce decree, the chancellor determined that a change in circumstances had occurred and conducted a hearing, before this Court rendered the *Dunn I* decision. Subsequently, the chancellor made findings of fact from another hearing, conducted in July 1993, which this Court asked him to do when it remanded for a hearing on child support. This Court never told the chancellor to reduce the child support payments, and the chancellor cannot be held in error for not doing so after the hearing on child support was conducted on remand.

¶18. The question remains, however, whether the chancellor was correct when he refused to lower Michael's child support payments. Michael now claims that, if anything, his financial situation worsened, and his child support obligations must decrease. Statutory guidelines for the support of children are relevant and may be considered by a chancellor as an aid in determining child support awards, but this Court has held that the specific need or support required is to be determined by a chancellor "at a time real, on a scene certain, and with a knowledge special to the actual circumstances and the other individual child or children." *Smith v. Smith*, 614 So. 2d 394, 397 (Miss. 1993). By making a written finding on the record that the application of the guidelines would be unjust or inappropriate, the rebuttable presumption of the appropriateness of an award pursuant to the guidelines may be overcome. *Thurman v. Thurman*, 559 So. 2d 1014, 1017-18 (Miss. 1990).

¶19. The chancellor found on September 20, 1993 as follows:

> The Court finds that the Defendant, MICHAEL HOSEA DUNN, has alleged that his business has deteriorated drastically since the divorce was granted in this matter. The Court further finds that MICHAEL HOSEA DUNN's testimony in regard to the deterioration of this business has been intentionally caused by the actions of MICHAEL HOSEA DUNN himself. The court further finds that MICHAEL HOSEA DUNN has not exercised or tried to exert himself in order to make the business, Dunn's Motors [sic][Mike Dunn Auto Sales] continue in the successful fashion that it was prior to the divorce. The Court further finds that MICHAEL HOSEA DUNN now alleges that he has been working as a salesman for an automobile business, a business of the same nature as Dunn's Motors [sic][Mike Dunn Auto Sales]; but states that he is presently working for his father as a salesman, and is therefore making a much smaller income. The Court finds and does believe, that in fact, MICHAEL HOSEA DUNN, is working for his father in an attempt to reduce his obligations, as previously ordered by the Court. The Court further finds that Mr. Dunn has chosen, of his own accord, to superficially reduce his income in order to seek relief from the prior judgment of this Court. It is therefore the Opinion of this Court that the previous judgment of this Court entered shall remain in full force and effect and be amended only in the fashion as set forth in the following paragraph. . . .

¶20. On January 25, 1994, the chancellor supported his decision not to apply the statutory guidelines with written findings:

> First, as to the amount of child support which was ordered by Chancellor Oswald in this case, and the Supreme Court having directed a written finding of whether application of the guidelines is reasonable be made, this Court has reviewed the situation in regard to the two minor children, and the Court finds that the application of the guidelines is not applicable in this case due to the fact that since the original trial of this matter, circumstances have changed as set forth in the preceding order of this Court. And based upon the change in circumstances, the age of the children, the expenses of raising the children, and the Court's inability to believe Mr. Dunn in regard to his financial circumstances, the Court does find that the support of $130 per week as ordered by Chancellor Oswald is a reasonable amount of child support based on the evidence that has been presented to the Court.

These findings are the proper subject for debate on appeal.

¶21. Based on this Court's decision in *Dunn I*, if the payment of the amount of child support

awarded is impossible based on the figures presented to the Court, then the chancellor erred in declaring the child support obligation. *See Dunn I*, 609 So. 2d at 1286. Here we are faced with a situation similar to that in *Dunn I*--Michael's monthly gross income is at best $1550 (less than in *Dunn I*), and there was no indication of how much he paid in social security or federal taxes to find the adjusted gross income. The difference between the amount awarded by the chancellor and the statutory amount is substantial. Michael is still required to pay one-half of the medical costs for Ashley and Matthew. Even after subtracting expenses Michael no longer has to pay, his expenses exceed his income by a wide margin, and the same is true for Danne.

¶22. Apparently, on remand, the chancellor believed that Michael was not being honest about his ability to pay the child support and other expenses related to the divorce. The record reflects circumstances which do substantiate doubts about Michael's inability to pay, including Michael's liquidation of his business without telling Danne, who held a $20,000 lien against the business; his willingness to partake in various entertainment activities; and, his inability to corroborate certain "loans" made to him.

¶23. The instant case is analogous to *Grogan v. Grogan*, 641 So. 2d 734 (Miss. 1994). In *Grogan*, this Court upheld a child support award in excess of the statutory guidelines where the chancellor had skepticism about the father's true earning potential. *Id.* at 741. We found that the chancellor could infer from the evidence that the father was receiving income that had not been disclosed. *Id.* at 741-42. Pursuant to *Grogan*, then, the chancellor below, by following the required method of rebutting the statutory presumption that the child support amount set forth in guidelines applied, did not err in departing from the guidelines where he stated his reasons for doing so, including relying on the question in his mind as to Michael's veracity regarding his financial circumstances.

### III.

¶24. Even though the chancellor in this case decided not to apply the statutory guidelines and affirmed a child support award in excess of those guidelines, the chancellor did not err in doing so. Based on the evidence presented at the two hearings, a child support award of $520 per month ($260 per child) was not an abuse of discretion, based on the chancellor's skepticism about Michael's true financial circumstances. We therefore affirm the chancellor's award of child support in the amount of $520 per month.

¶25. **JUDGMENT IS AFFIRMED.**

**PRATHER AND SULLIVAN, P.JJ., PITTMAN, BANKS, ROBERTS, SMITH AND MILLS, JJ., CONCUR. LEE, C.J., CONCURS IN RESULT ONLY.**

1. At the July 1993 hearing, Michael testified that his new wife was pregnant. Presumably, this child has been born and is living with Michael and his wife now.