## IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2017-CA-01476-SCT

*TRACY MARIE MILES WILLIAMS*

*v.*

*BRENT REID WILLIAMS*

| | |
|---|---|
| DATE OF JUDGMENT: | 02/01/2017 |
| TRIAL JUDGE: | HON. VICKI B. DANIELS |
| TRIAL COURT ATTORNEYS: | L. ANNE JACKSON |
| | LEIGH ANN DARBY |
| | JERRY WESLEY HISAW |
| | LUTHER PUTNAM CRULL, JR. |
| | VANESSA WINKLER PRICE |
| COURT FROM WHICH APPEALED: | DeSOTO COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | JERRY WESLEY HISAW |
| | VANESSA WINKLER PRICE |
| ATTORNEY FOR APPELLEE: | LUTHER PUTNAM CRULL, JR. |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED - 01/17/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE RANDOLPH, P.J., MAXWELL AND BEAM, JJ.**

**BEAM, JUSTICE, FOR THE COURT:**

¶1.    This appeal and cross-appeal arise from a judgment of divorce in the DeSoto County Chancery Court.  At the trial of this matter, the chancellor granted Brent and Tracy Williams an irreconcilable-differences divorce and resolved the issues upon which the parties could not agree.  At issue in the direct appeal is (1) whether the chancellor erred by not providing Tracy a set visitation schedule with their teenage son, (2) whether the chancellor erred in requiring Tracy to pay child support, (3) whether the chancellor erred in the valuation of the

Williams's business interests, and (4) whether the chancellor erred in finding an airplane and a boat to be marital property. On cross-appeal, the issue is whether the chancellor erred by not ordering Tracy to make monthly payments to Brent on his $1 million judgment award. Finding no merit to the assignments of error on appeal or cross-appeal, we affirm the judgment of the chancery court.

## FACTS AND PROCEDURAL HISTORY

¶2.     Brent and Tracy married on March 5, 1993, and separated on September 1, 2013. The parties had three children, two of whom are emancipated. The youngest child, Kendall Williams, was fourteen years old at the beginning of this matter and seventeen years old by the time the chancellor ruled. At present, he is eighteen years old, attending IMG Academy, an advanced multi-sport and educational institution in Bradenton, Florida, and is not living with either parent.

¶3.     On October 3, 2013, Brent filed his complaint for divorce. Discovery ensued, and the matter was ultimately tried over the course of five days on January 9, 2015, May 8, 2015, July 2, 2015, August 31, 2015, and October 15, 2015. The chancellor ruled from the bench on January 9, 2017, and entered the judgment of divorce on February 1, 2017.

¶4.     On February 9, 2017, Tracy filed a motion to alter or amend the judgment, and Brent filed a response and counter-motion the following day. On October 2, 2017, the chancellor denied the post-trial motions. Aggrieved, Tracy now appeals to this Court, and Brent cross-appeals.

## LAW AND ANALYSIS

## I. Standard of Review

¶5.    "This Court will not disturb a chancellor's judgment when supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong, clearly erroneous, or an erroneous legal standard was applied." ***Chapel v. Chapel***, 876 So. 2d 290, 292 (Miss. 2004) (quoting ***Townsend v. Townsend***, 859 So. 2d 370, 371-72 (Miss. 2003)). Under this standard of review, our purpose is to determine whether the chancellor's ruling was supported by credible evidence, not whether we agree with that ruling.  ***Lee v. Lee***, 798 So. 2d 1284, 1290 (Miss. 2001).  "However, we review the chancellor's interpretation and application of the law de novo." ***Marshall v. Gipson Steel, Inc.***, 806 So. 2d 266, 270 (Miss. 2002) (citing ***In re Will of Carney***, 758 So. 2d 1017, 1019 (Miss. 2000)).

## II. Whether the chancellor erred by not providing Tracy a set visitation schedule.

¶6.    "The chancellor has broad discretion when determining appropriate visitation and the limitations thereon." ***Harrington v. Harrington***, 648 So. 2d 543, 545 (Miss. 1994) (citing ***White v. Thompson***, 569 So. 2d 1181 (Miss. 1990)). "When the chancellor determines visitation, he must keep the best interest of the child as his paramount concern while always being attentive to the rights of the non-custodial parent, recognizing the need to maintain a healthy, loving relationship between the non-custodial parent and his child." ***Id.***  At the trial of this matter, the chancellor ruled,

> Mom can have visitation with the child to be agreed upon between Mom and the child.  The Dad is ordered not to interfere with the visitation, but, as I stated earlier, Mom's actions and her continued actions and interference with this child have caused this alienation.  It is not Dad's fault, and so, I am not

placing a burden – I'm not giving you a specific visitation schedule because I'm not placing a burden on Dad to make this child visit.

¶7. Tracy argues that the chancellor erred by allowing a child to set visitation at his discretion. While the chancellor acknowledged that her ruling on visitation was different from her normal practice, she found that Kendall's desires and wishes should be taken into consideration. Trial revealed that Tracy had removed Kendall's possessions, furniture, and rifle from the marital home, as well as his money jug containing $800. The court found that Kendall had viewed his mother's actions as a personal affront. Tracy refused to provide Kendall the necessary documentation to complete driver's education, to receive a passport so he could travel outside the United States with the USA baseball team, or to transfer from Magnolia Heights School to a DeSoto County school for better baseball opportunities. The chancellor stated, "Quite honestly, I think she's done some things that I think indicate that she's much more interested in getting her own way than in thinking about what's in the best interest of her child."

¶8. Tracy correctly stated that this Court has made it clear that the objective of visitation is that "the non-custodial parent . . . and child should have as close and loving a relationship as possible, despite the fact that they may not live in the same house." *Dunn v. Dunn*, 609 So. 2d 1277, 1286 (Miss. 1992) (citing *Clark v. Myrick*, 523 So. 2d 79, 83 (Miss. 1999)). However, this Court has also found that, while a non-custodial parent is presumptively entitled to visitation as stated in *Griffin v. Griffin*, that presumption can be overcome when "substantial evidence" justifies doing so. *Griffin v. Griffin*, 237 So. 3d 743, 747 (Miss. 2018) (quoting *Cox v. Mounds*, 490 So. 2d 866, 870 (Miss. 1986)). *Cf. Newsom v. Newsom*, 557

4

So. 2d 511, 517 (Miss. 1990) (emphasis removed) (holding "that the chancery court has the power to restrict visitation in circumstances which present an appreciable danger of hazard cognizable in our law").

¶9.     In *Griffin*, the chancellor denied a mother visitation with her four daughters because visitation was not in the children's best interests. *Griffin*, 237 So. 3d at 745-46.  The mother was incarcerated in the Washington County Correctional Facility in Greenville, Mississippi, four hours away from where the daughters lived. *Id.*  In order to exercise visitation, the daughters would have to be searched and exposed to the prison environment. *Id.* The chancery court held that the presumption of visitation had been overcome.  *Id.* at 746.  "The chancellor considered Nolana's circumstances and deemed phone visitation, for now, and possible future in-person visitation at Chad's discretion was the best possible balance between recognizing Nolana's constitutionally protected rights, encouraging the parent-child relationships, and protecting the girls' best interest." *Id.* at 749  (citing *Harrington*, 648 So. 2d at 545).  On appeal, this Court affirmed the chancellor's ruling.

¶10.    Although the facts of this case differ, the principle that a presumption of visitation can be overcome with sufficient evidence remains the same.  Kendall is eighteen years old and is living in Florida to pursue his baseball career.  Although the chancellor had only become aware of Kendall's new schooling in Florida just before her ruling, the knowledge did not change her mind about visitation. She stated,

> And there is a huge big rift to heal.  And I know forcing him to come to your house every other weekend – which you can't do because he's living in Florida, anyway – is not going to fix that situation.  And I want y'all to figure

5

out some way – you know, as I said, maybe this time and distance will help fix it.

¶11. Based on the facts presented at trial, this Court finds that the chancellor did not err in declining to set a visitation schedule under these unique circumstances. Given the broad deference afforded chancellors in visitation matters, we affirm the chancellor's ruling. Tracy and Brent can travel to Florida any time to support and to visit Kendall while he pursues his baseball dreams.

### III. Whether the chancellor erred in requiring Tracy to pay child support.

¶12. "This Court has said that an award of child support is a matter within the discretion of the chancellor and that determination will not be reversed unless the chancellor was manifestly wrong in his finding of fact or manifestly abused his discretion." *Clausel v. Clausel*, 714 So. 2d 265, 266 (Miss. 1998) (quoting *Gillespie v. Gillespie*, 594 So. 2d 620, 622 (Miss. 1992)). Furthermore, "[t]he process of weighing evidence and arriving at an award of child support is essentially an exercise in fact-finding, which customarily significantly restrains this Court's review." *Id.* at 266-67.

¶13. At the trial of this matter, Tracy alleged her adjusted gross income was $1,010.87 in her Uniform Chancery Court Rule 8.05 financial statement, so $1,000 in child support would consume all of her income. Tracy owns a daycare, Kaco's Kids, and, according to the tax returns admitted into evidence at the trial, Tracy's 2013 self-employment earnings were $152,090; her gross earnings were $242,763 per year, or $20,230.25 per month, in 2013. She testified that she paid over $15,000 to pay off the note on Tennessee property that she and

6

Brent owned. She purchased a new home in October 2015. She refused to allow Brent to sell timber on the Tennessee property in order to pay the Tennessee's property's remaining debt and instead paid the note herself. Tracy's daughter Kaitlyn testified that Tracy told her she had purchased an airplane and a boat.

¶14. While the standard for child support for one child is 14 percent of the adjusted gross income, pursuant to Mississippi Code Section 43-19-101 (Rev. 2015), a court may impute income to a payor whose reported income is clearly inadequate to support his or her actual lifestyle. *See* Deborah H. Bell, *Deborah H. Bell on Family Law* § 10.04[4][c] (1st ed. 2005). In *Dunn v Dunn*, on remand, a chancellor found that a father was not being honest about his ability to pay child support. *Dunn v Dunn*, 695 So. 2d 1152, 1156 (Miss. 1997). "The record reflects circumstances which do substantiate doubts about Michael's inability to pay . . . his willingness to partake in various entertainment activities . . . ." *Id.* This Court affirmed the ruling of the chancellor, because the child support amount exceeded the statutory guidelines. *Id.*

¶15. The Court in *Dunn* analogized *Grogan v. Grogan*, in which this Court had held that a child-support award in excess of the statutory guidelines is appropriate when the chancellor is unsure about the father's true earning potential. *Dunn*, 695 So. 2d at 1157 (citing *Grogan v. Grogan*, 641 So. 2d 734, 741 (Miss. 1994)). The *Grogan* Court had found that the chancellor did not err in imputing income to the father when evidence showed that he was not being truthful about his finances. *Id.*

¶16. Here, the chancellor found that "Mom is obviously . . . she is making quite a great deal of money." Based on the evidence, the record does not support her claim that her adjusted-gross income is $1,010.87; therefore, the chancellor properly imputed additional income to Tracy.

¶17. Tracy makes other arguments to contest the child-support award, but this Court finds these are without merit. Tracy argues that Kendall has no expenses. Although Kendall has a full scholarship to attend IMG Academy, which costs $78,000 a year, Brent is still responsible for $4,600 of Kendall's other expenses, and the court found that Tracy should contribute. From the date Brent and Tracy separated, Tracy has not paid any child support for Kendall. Tracy argues that child support can be suspended during college and/or forfeited due to the child's conduct; however, the chancellor already determined that Tracy would not be required to pay half of the college expenses if the child does not have a viable relationship with her. The Court is unpersuaded by Tracy's attempt to argue that she needs a visitation schedule while simultaneously arguing she should not have to support the child who does not want to visit her. Accordingly, the chancellor did not err in requiring Tracy to pay child support in the amount of $1,000 per month.

### IV. Whether the chancellor erred in the valuation of the Williams's business interests.

¶18. Tracy argues that the chancellor erred in the valuation of the Williams's business interests by using Brent's submitted documents; however, she failed to offer any evidence at trial related to the valuations. The chancellor requested that the parties submit a list of the assets, values, and debts on two separate occasions. At trial, Tracy failed to list or value the

8

assets of the businesses, while Brent submitted a detailed list. Tracy's financial statement listed the value of her daycare, Kaco's Kids, as unknown. Further, Tracy argues that the chancellor erred by not appointing an expert to opine about the true current valuations of the property due to depreciation, although Tracy never requested that the Court appoint an expert.

¶19. While we note that "expert testimony may be essential to establish valuation sufficient to equitably divide property, particularly when the assets are diverse . . . ," *Ferguson v. Ferguson*, 639 So. 2d 921, 929 (Miss. 1994), we also recognize and "reiterate the principle that findings on valuation do not require expert testimony and may be accomplished by adopting the values cited in the parties' 8.05 financial disclosures, in the testimony, or in other evidence." *Horn v. Horn*, 909 So. 2d 1151, 1165 (Miss. Ct. App. 2005) (quoting *Ward v. Ward*, 825 So. 2d 713, 719 (Miss. Ct. App. 2002)).

¶20. Here, the record reflects that only Brent attempted to provide the chancellor with evidence regarding the valuations of the parties' business interests, and the chancellor used those valuations as reflected in her opinion. Tracy's argument that the chancellor committed reversible error by not appointing experts to appraise the current valuations due to depreciation is without merit. This Court refuses to blame the chancellor for a party's failure to present sufficient evidence of property valuation. Faced with similar circumstances, we stated the following in *Dunaway v. Dunaway*:

> It is our conclusion that the chancellor, faced with proof from both parties that was something less than ideal, made valuation judgments that find some evidentiary support in the record. To the extent that the evidence on which the chancellor based his opinion was less informative than it could have been, we

9

lay that at the feet of the litigants and not the chancellor. The chancellor appears to have fully explored the available proof and arrived at the best conclusions that he could, and we can discover no abuse of discretion in those efforts that would require us to reverse his valuation determinations.

*Dunaway v. Dunaway*, 749 So. 2d 1112, 1121 (Miss. Ct. App. 1999). As explained in *Dunaway*, the chancellor's duty is not to obtain appraisals of the marital property. *Id.* Further, the *Dunaway* court found that, while expert testimony about property valuations might be helpful in some cases, it is not required, and the chancellor may consider other evidence presented by the parties. *Id.*

¶21. Tracy did not come forth with expert testimony or any other valuations of the businesses; therefore, the chancellor used the available proof, including Brent's valuations, and arrived at the best conclusion that she could. Accordingly, this Court finds the chancellor did not err in the valuation of the Williams's business interests.

**V. Whether the chancellor erred in finding the boat and airplane to be marital property.**

¶22. "When the parties request that the chancellor resolve the issue of property division, the chancellor must do three things: (1) classify the parties' assets as marital or separate, (2) value those assets, and (3) divide the marital assets equitably." *Burnham v. Burnham*, 185 So. 3d 358, 361 (Miss. 2015) (citing *Wheat v. Wheat*, 37 So. 3d 632, 637 (Miss. 2010)). In *Hemsley v. Hemsley*, this Court held that "[a]ssets acquired or accumulated during the course of a marriage are subject to equitable division unless it can be shown by proof that such assets are attributable to one of the parties' separate estates prior to the marriage or outside the marriage." *Hemsley v. Hemsley*, 639 So. 2d 909, 914 (Miss. 1994). *Ferguson*

10

established that gifts and inheritances received during marriage are separate property. *Ferguson*, 639 So. 2d at 929.

¶23. Tracy argued that the chancellor erred in ruling that the boat and airplane are marital property because her mother gave her a gift of money in the form of a Certificate of Deposit that she later cashed to purchase the boat and airplane; therefore, Tracy claims the boat and airplane were gifts or inheritances. The chancellor was unconvinced. At trial, Tracy testified that her mother wanted to leave her something before she died, so she used her mother's cash to buy the airplane. However, Tracy's daughter Kaitlyn testified that Tracy originally told her that she had purchased the plane and the boat but that she then "changed her tune and said that the plane was bought by her mother and that it was really her mother's." Kaitlyn further testified that her grandmother does not have a lot of money. Tracy did not call her mother to testify to verify her testimony or to introduce any supporting documents. A chancellor's findings of fact will not be disturbed unless manifestly wrong or clearly erroneous. *Sanderson v. Sanderson*, 824 So. 2d 623, 625-626 (Miss. 2002) (citations omitted). This Court holds that the chancellor's findings of fact are not erroneous.

> **VI.** **Whether the chancellor erred in failing to order Tracy to make monthly payments on the $1 million judgment.**

¶24. During the marriage, Tracy ran a daycare, and Brent ran a construction company. The chancellor, in distributing the assets, awarded each party their individual businesses. Due to an inequality in the value of the assets, however, the chancellor granted Brent a judgment and lien against Tracy's business for $1 million at 2 percent interest that would not be executed upon for ten years.

¶25.   On appeal, Brent argues that having to wait ten years to execute on the judgment places him in the position of having a right without a remedy, thus his chances of ever receiving the judgment are nonexistent without a present right to collect or enforce payment. The chancellor, considering the immense debt and absence of liquid assets in Kaco's Kids, found that Tracy could not begin paying on the judgment. Further, allowing Brent to immediately execute on the judgment would force Kaco's Kids into liquidation.

¶26.   For additional security on the $1 million judgment in the interim, the chancellor ordered that Tracy maintain Brent as the named beneficiary on her $1 million life-insurance policy. The chancellor stated, "If she pays something down on the judgment that he has, then as the balance reduces owed to Brent then, likewise, the amount of life insurance that you have to keep on your life will go down." Without an abuse of discretion, manifest error, or application of an erroneous legal standard, this Court will not disturb the chancellor's findings and, as such, affirms the chancellor's ruling.

## CONCLUSION

¶27.   This Court holds that the chancellor's ruling on all five issues in the appeal and cross-appeal are supported by credible evidence and, given the broad deference afforded chancellors, this Court affirms the chancellor's ruling.

¶28.   **AFFIRMED.**

**WALLER, C.J., RANDOLPH AND KITCHENS, P.JJ., KING, COLEMAN, MAXWELL, CHAMBERLIN AND ISHEE, JJ., CONCUR.**