# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-CA-01293-COA

**THOMAS WAYNE COLBERT, JR.**                    **APPELLANT/ CROSS-APPELLEE**

**v.**

**MING XIAO COLBERT**                    **APPELLEE/ CROSS-APPELLANT**

DATE OF JUDGMENT:          10/17/2022
TRIAL JUDGE:               HON. JOHN C. McLAURIN JR.
COURT FROM WHICH APPEALED: RANKIN COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT:    JENNIFER LEIGH BOYDSTON
ATTORNEYS FOR APPELLEE:    JOHN S. GRANT IV
                           BROOKE TRUSTY GRANT
NATURE OF THE CASE:        CIVIL - DOMESTIC RELATIONS
DISPOSITION:               ON DIRECT APPEAL: AFFIRMED IN
                           PART; REVERSED AND REMANDED IN
                           PART. ON CROSS-APPEAL: AFFIRMED IN
                           PART; REVERSED AND REMANDED IN
                           PART - 02/25/2025
MOTION FOR REHEARING FILED:

**EN BANC.**

**McCARTY, J., FOR THE COURT:**

¶1.     A wife petitioned for separate maintenance from her husband, and also asked for child support for their two children. The husband counterclaimed for a divorce. The trial court ultimately denied the husband's request but granted the wife's request for separate maintenance and child support.

¶2.     The husband appealed, arguing an antenuptial agreement barred separate maintenance. Both parties have appealed the child support awarded by the trial court; the husband argues

it is too high, while the wife protests it is too low.

¶3.     Since the husband never presented his argument about the antenuptial agreement to the trial court, we find the argument is procedurally barred.  However, because the amount of child support awarded did not follow longstanding requirements as to the calculation of income and deviation from statutory guidelines, we affirm in part and reverse and remand in part.

## BACKGROUND

¶4.     Ming and Thomas Colbert were married in the fall of 2013.  The month before they married, the two entered into an antenuptial agreement.[1]  In the core of the document was this passage:

> Although Tom and Ming are entering into their contemplated marriage with every intention to remain married for as long as each shall live, both recognize that such marriage may not be as successful as both hope, and that a divorce, annulment, *separate maintenance proceeding* or other legal proceeding to dissolve the marriage between Tom and Ming could occur.
>
> [T]he parties do hereby agree in the event of any such legal proceeding involving a divorce, annulment, *separate maintenance* or similar proceeding, Tom shall not be entitled to any greater rights with regard to the income or assets of Ming than Tom would have in the event of the death of Ming and Ming shall not be entitled to any greater rights with regard to the income or assets of Tom than is provided for in Paragraph 9 below.

(Emphasis added).  Both parties signed.  As litigation would later show, the document was negotiated in several ways, including those more favorable to Ming than originally proposed,

---

[1] For the purposes of this appeal, we will refer to the document interchangeably as an antenuptial agreement, prenuptial agreement, or "prenup."

2

such as requiring Tom to provide health insurance for Ming during their marriage.

¶5.     Over the years two children were born into the marriage, and Tom was very successful in business.  But as the prenup contemplated, the marriage was not as successful as the couple hoped.  Tom filed for divorce in 2015, but the couple eventually reconciled.  However, during the pendency of that divorce, Ming sought to have their prenup declared invalid.  Her motion was still pending when the divorce case was dismissed in 2017.

¶6.     In 2021, Ming filed for separate maintenance from Tom, alleging that he had "physically abandoned and separated himself from the marriage."  Instead of asking for a divorce, Ming requested that the chancery court "command[] Tom to return to the marital relationship and provide support and maintenance to Ming and the minor children[.]"

¶7.     Tom forcefully responded, first arguing the couple's prenuptial agreement governed any request for separate maintenance.  But he did not allege the agreement barred separate maintenance in general, instead only "affirmatively assert[ing] that the [agreement] be applied and enforced in this matter as applicable."  Secondly, he filed a counterclaim demanding a divorce from Ming on the basis of habitual cruel and inhuman treatment, "including spousal abuse," and because her actions led to "the proximate cause of the separation of the parties."

¶8.     The case proceeded through what can only be described as a massive amount of litigation. The very first filing after Tom's counterclaim for divorce was his motion seeking a declaratory judgment "that the Prenuptial Agreement between the parties is valid,

3

enforceable[,] and effective." The motion included dozens of pages of emails showing the negotiation of the agreement between Tom and Ming, including prior deposition testimony relating to its drafting and signing and discussions underpinning its terms.

¶9. The motion had two sections. First, he argued the agreement was not procedurally invalid; specifically, that Ming understood it, did not sign under duress, and had independent counsel, among other arguments. Second, Tom argued the agreement was not substantively unconscionable. Notably, Tom's motion did not argue that the antenuptial agreement barred the separate maintenance action or that the agreement preempted the litigation.

¶10. Subsequently, Ming filed a Motion to Declare Prenuptial Agreement Null, Void, and Unenforceable. In this motion, Ming raised a variety of duress and unconscionability attacks on the agreement, such as that "Tom selected Ming's attorney and paid Ming's attorney for his representation," that she "was not versed in nor understood the laws of the United States of America and the State of Mississippi," that she was in the United States from China on a student visa, and that she was "not fluent in the English language and did not understand the terms and provisions" of the antenuptial agreement. In response, Tom characterized the process to draft the agreement as "a four-month negotiation process," and he dismissed her concerns as "a number of abstract grievances."

¶11. The trial court conducted a multi-day hearing regarding the validity of the antenuptial agreement, during which it heard from several witnesses. Among them were Ming, Tom, the lawyer who served as Ming's attorney in the prenup process, and a financial expert. At

the conclusion of the hearing, the trial court ruled from the bench that it "finds that the Prenuptial Agreement is binding [and] will be enforced as written." The trial court instructed counsel for Tom to prepare an order. The chancellor then said, "[W]e'll just have to step back and see where we're going to go from here" in the case. The order denying the motion to declare the antenuptial agreement void simply stated the "Motion was not well taken and the same should be and is denied," and that the prenup was declared valid.

¶12.    At no point in this hearing or at the conclusion of presenting of evidence did counsel for Tom argue that the prenup barred separate maintenance or that the proceedings should be stopped immediately. So a week later, the trial court proceeded to hear evidence regarding Ming's claim for separate maintenance. After testimony, counsel for Tom informed the trial court, "[W]e'd like to present a motion to dismiss." He did not argue that the antenuptial agreement barred separate maintenance. Instead, counsel for Tom focused on what he argued was an element that could not be proven to meet the standard for separate maintenance since one has to prove "a separation without substantial fault of the requesting party." Counsel for Tom further argued Ming was partially at fault, so she was not entitled to the relief; he also argued Tom had not acted in a way that warranted separate maintenance. All told, the thrust of the motion to dismiss was that the predicates for separate maintenance were not met, not that separate maintenance was barred due to the prenup.

¶13.    The trial court ultimately denied the motion to dismiss and granted Ming's request for separate maintenance. In turn, the trial court refused to grant Tom a divorce for habitual

5

cruel and inhuman treatment, finding there was not enough proof to support it.

¶14. Ming's attorney signaled he was ready to call a witness to testify as to child support, but the chancellor told him, "I really don't need you to. [Tom is] under a temporary order to pay $7,000 in separate maintenance, which is combined spousal support and child support." The chancellor further reasoned that "[t]here's been not one word that him paying that amount of money every month creates a financial hardship on him or that he is in any way unable to pay it," and "[i]n fact, all the financial evidence corroborates the fact that he's well able to pay it[.]"

¶15. When queried by Ming's attorney whether this order was for both "child support and separate maintenance," the chancellor responded, "[I]t's all in one. I mean, it's a package deal." The final judgment from the trial court reflected this bench ruling: "Tom shall pay separate maintenance in the amount of $7,000 per month, which is combined spousal support and child support, and which is due and payable on the fifteenth of each month."

¶16. Tom appealed from this judgment, and Ming cross-appealed.

**DISCUSSION**

¶17. On appeal, Tom raises four issues. First, he argues that "Ming waived the right to receive separate maintenance" by virtue of the prenup; that the child support did not conform to the statutory guidelines; that the child support was too high; and the trial court's handling of proof raised a procedural matter.

¶18. On cross-appeal, Ming argues that "[t]he child-support award should be reversed and

6

remanded because the chancellor did not make any findings" regarding how much Tom made, whether the amount was reasonable, or why the chancellor deviated from the statute.

¶19. In short, Tom and Ming both agree the child support awarded did not conform to precedent or our statute. We agree and reverse and remand on this point. We decline to review the other issues raised and find Tom's argument that the antenuptial agreement bars separate maintenance is procedurally barred. We also sua sponte address the sealed record in this case.

## I. The argument that the antenuptial agreement bars separate maintenance is procedurally barred.

¶20. Tom argues the language of the antenuptial agreement between Ming and him forecloses an award of separate maintenance.

¶21. "An antenuptial agreement is a contract and should be interpreted just like any other contract." *Bowman v. Bowman*, 332 So. 3d 317, 321 (¶5) (Miss. Ct. App. 2021). "Contract interpretation involves a two-step inquiry," where we first "must determine whether a contract is ambiguous and, if not, enforce the contract as written." *Id*. (internal citation and quotation mark omitted). We use a de novo standard to review whether a contract is ambiguous. *Id*.

¶22. "Second, in the event of an ambiguity, the subsequent interpretation presents a question of fact for the fact-finder which we review under a substantial evidence/manifest error standard." *Id*. "If the terms of a contract are subject to more than one reasonable interpretation, their meaning presents a question of fact for the fact-finder." *Id*.

7

¶23.   Tom's first issue on appeal is that the prenup bars separate maintenance. Ming strongly counters that his position is procedurally barred. Ming points out how Tom generally sought for the trial court to enforce the agreement but never specifically argued it precluded separate maintenance. In rebuttal, Tom attempts to circumvent the issue by stating that he had "asked that the Agreement be applied and enforced."

¶24.   But Tom fails to point to a single line in the thousands of pages of this record where he in fact asked the chancellor to foreclose a grant of separate maintenance. As set out above, the first filing after Tom's answer and counterclaim for divorce was a "Motion for Declaratory Judgment" regarding the antenuptial agreement. But that filing only generally requested a finding that the prenup was valid. It did not ask the trial court to declare that Ming's claim for separate maintenance was totally barred. During the hearing of this matter, Tom's lawyer also argued Ming's claims should be involuntarily dismissed. However, the claimed basis for the dismissal was not that the prenup barred separate maintenance but that Ming's own conduct barred it, or the situation did not warrant separate maintenance. And at the close of a hearing successfully defending against Ming's attempt to have the agreement declared void, Tom never argued that the agreement barred separate maintenance.

¶25.   This Court has recently contemplated a dispute over insurance proceeds where a party "present[ed] a detailed argument why interest should be awarded, citing the statute and precedent." *In re Est. of Green*, 396 So. 3d 169, 174 (¶21) (Miss. Ct. App. 2024). "Yet this statute and related cases were not argued below." *Id*. at (¶22). In filings below, the party

"devoted only three sentences to why interest should be awarded," and in arguments to the trial court, the party "did not present statute or precedent warranting a grant of interests on the return of the [insurance] policies." *Id*.

¶26.    Citing well-established law, we found "this argument procedurally barred on appeal." *Id*. at 175 (¶24).  For "[i]t is a well-settled rule that a trial judge will not be found in error on a matter not presented to the trial court for a decision." *Id*. at 174 (¶23) (internal quotation mark omitted).  The fundamental problem is that we cannot review something that does not exist:  "Absent a motion preserving a claim of error we have no ruling of the trial court for review on that particular point." *Id*. at 175 (¶23) (internal quotation mark omitted).  "Issues raised for the first time on appeal are procedurally barred from review as they have not first been addressed by the trial court." *Griffin v. State*, 824 So. 2d 632, 635 (¶7) (Miss. Ct. App. 2002); *Williams v. Williams*, 309 So. 3d 560, 567 (¶39) (Miss. Ct. App. 2020) (applying the procedural bar where a party argued for the first time on appeal that the report of a guardian ad litem contained hearsay because "[t]he well-recognized rule is that a trial court will not be put in error on appeal for a matter not presented to it for decision").

¶27.    As in those cases, this issue was simply not raised below, meaning there is no ruling from the trial court that we can review.  The trial court did not grant or deny a motion to dismiss on the theory the antenuptial agreement barred separate maintenance, so there is no decision for this Court to review; as such, relief was not requested.  To the extent Tom argues there are some insinuations of his contention below, as in *Estate of Green*, they were not

9

meaningfully developed—despite litigation spanning nine volumes of clerk's papers, six supplemental volumes, nine volumes of transcript, and over 1,700 pages of exhibits.

¶28.    This issue was simply not developed below, and we cannot put a trial court in error for a matter not presented to it.  Accordingly, we find Tom waived his argument that the antenuptial agreement bars a grant of separate maintenance.

## II.    The child support award was not supported by sufficient findings.

¶29.    Both sides attack the trial court's grant of a "package deal" for spousal support and child support, arguing the trial court did not follow precedent or statute to ascertain the amounts due by Tom.  Tom argues in his principal brief that the amount of $7,000 was too much.  In Ming's cross-appeal, she argues the amount was "almost certainly too low."

¶30.    In Tom's response brief, he argues that the trial court "simply picked a number 'out of the air,' so to speak," as to the amount of child support and that this is "reversible error." Tom further acknowledged that on appeal, he and Ming had "reached the same conclusion," which was "that the chancellor did not follow the statutory procedure, and that this failure is reversible error."

¶31.    The fact that Tom and Ming agree does not in itself warrant reversal, but both are correct that the trial court did not distinguish *how* child support was calculated, how a deviation from the statutory guideline was reached, or what the actual amount of child support was, as distinguished from the award of separate maintenance.  Therefore we agree that this ruling must be reversed and remanded.

¶32.     State law establishes "child-support award guidelines" that have a "rebuttable presumption" of correctness.  Miss. Code Ann. § 43-19-101(1) (Rev. 2023).  Per the guidelines, a parent who is required to pay child support for two children is assessed a payment of 20% of his or her monthly adjusted gross income.  *Id*.  The statute defines how to calculate the AGI of the payor.  Miss. Code Ann. § 43-19-101(3).

¶33.     If the parent has an AGI of more than $100,000 a year, "the court *shall make a written finding in the record* as to whether or not the application of the guidelines established in this section is reasonable."  Miss. Code Ann. § 43-19-101(4) (emphasis added).  "By making a written finding on the record that the application of the guidelines would be unjust or inappropriate, the rebuttable presumption of the appropriateness of an award pursuant to the guidelines may be overcome."  *Dunn v. Dunn*, 695 So. 2d 1152, 1155 (Miss. 1997).

¶34.     In her cross-appeal, Ming argues that the trial court did not follow the statute in three ways: by not determining Tom's adjusted gross income, by not applying the guidelines to the AGI, and by not explaining a deviation from the guidelines, if any.

¶35.     As one authority has concluded, "[t]he absence of required findings of fact is the most common reason for reversal of child support awards."  Deborah H. Bell, *Bell on Mississippi Family Law*, §13.04[1][b], at 491 (3d ed. 2020).  As our appellate courts have repeatedly declared, "without an express finding of fact as to the payor's income, it cannot be said that the child-support guidelines were either followed or not followed."  *Foreman v. Foreman*, 223 So. 3d 178, 187 (¶29) (Miss. Ct. App. 2017) (internal quotation marks omitted).  In that

11

case, we lamented that "[t]he record does not indicate which documentation the chancellor relied upon when calculating the child-support award." *Id*. So "we conclude[d] that the chancellor failed to make an express finding of fact as to [the father's] income." *Id*.

¶36. In *Foreman*, we "affirmed as to the finding that child support is warranted" but remanded for the trial court "to make an express finding with regard to [the father's] current income." *Id*. at (¶30). We reach the same conclusion here.

¶37. We reverse the combined award of $7,000 per month for both spousal support and child support. On remand, the trial court should:

1. Calculate Tom's monthly adjusted gross income, which we note includes "all potential sources" reasonably available to him per section 43-19-101(3)(a).[2]

2. Apply the child support guidelines to Tom's adjusted gross income.

---

[2] The statute sets that AGI "shall be calculated" by calculating the below information before subtracting deductions:

[A]*ll potential sources* that may be reasonably be expected to be available to the absent parent including, *but not limited to*, the following: wages and salary income; income from self-employment; income from commissions; income from investments, including dividends, interest income and income on any trust account or property; absent parent's portion of any joint income of both parents; workers' compensation, disability, unemployment, annuity and retirement benefits, including an Individual Retirement Account (IRA); any other payments made by any person, private entity, federal or state government or any unit of local government; alimony; any income earned from an interest in or from inherited property; any other form of earned income; and gross income shall exclude any monetary benefits derived from a second household, such as income of the absent parent's current spouse[.]

Miss. Code Ann. § 43-19-101(3)(a) (emphasis added).

12

3. Determine if a guideline deviation is warranted; and, if so, provide a written finding as to why.

¶38. Having arrived at the amount of child support, the trial court is to then separately calculate the amount of separate maintenance due to Ming, if any.

¶39. Accordingly, we will reverse and remand in part for proceedings in accord with this opinion.

### III. The sealing of the record was not in accord with precedent.

¶40. We sua sponte raise the issue of the seal over this case. We have previously held:

> Our Constitution mandates that "[a]ll courts shall be open," Miss. Const. art. 3, § 24, and "Mississippi law favors public access to public records." *Estate of Cole v. Ferrell*, 163 So. 3d 921, 925 (¶18) (Miss. 2012). "Court filings are considered to be public records, unless otherwise exempted by statute." *Id*. at (¶15). In addition, a court may, within its discretion, determine that court filings or information contained therein "should be declared confidential or privileged" and sealed from public disclosure. *Id*. at (¶16). However, before sealing an entire case, a trial court should first "conduct the balancing test set out in *Estate of Cole*," *supra*. *Smith v. Doe*, 268 So. 3d 457, 464 (¶27) (Miss. 2018); *accord Butler Snow LLP v. Estate of Mayfield*, 281 So. 3d 1214, 1220 (¶¶27-29) (Miss. Ct. App. 2019). That test balances the claimed private interest in confidentiality against the public interest in open courts. *Estate of Cole*, 163 So. 3d at 924, 929 (¶¶11, 32-33).

*Fulgham v. Morgan & Morgan PLLC*, 363 So. 3d 980, 988 (¶24) (Miss. Ct. App. 2019).

¶41. In *Fulgham*, we found that "the chancery court did not conduct any balancing test or any analysis of [the law firms'] request to seal the entire case. The order sealing the case was simply entered following an ex parte hearing." *Id*. at (¶25). But it was "not clear that the court file in this case contains any privileged attorney-client communications or confidential

13

client information." *Id.*

¶42. For the mere "fact that a few specific filings may contain privileged or confidential information does not warrant sealing the entire case from public view." *Id.* Instead, "specific documents can be redacted or filed under seal as necessary." *Id.* We ultimately determined that the trial court abused its discretion in sealing the whole file without "first balanc[ing] the asserted private interest in confidentiality against the public interest in open courts and transparent judicial proceedings." *Id.* at 989 (¶27).

¶43. Just as in that case, here there was no consideration of the *Estate of Cole* test. During a motion hearing, one of the attorneys for Tom asked for an affidavit of a financial analyst to be sealed; Ming's lawyer did not object. The trial court inquired if the file itself was sealed; Ming's lawyer said, "You can seal the whole file for all I care, judge," and Tom's attorney agreed. The trial court then proceeded to seal the whole file.

¶44. This sequence of events leading to the sealing of this case does not conform to our constitution or precedent. Upon remand, the trial court is directed to consider and apply the applicable test and, pursuant to that review, make a written finding and in its discretion "determine what, if any, part of the record should be sealed or redacted under the Supreme Court's decision in *Estate of Cole.*" *Id.*

## CONCLUSION

¶45. Tom's argument that the antenuptial agreement bars a grant of separate maintenance was not presented to the trial court, so we find the issue is procedurally barred and affirm in

part. However, since the required findings of fact were not made as to child support, we reverse and remand in part. We also remand for the trial court to apply the applicable test for the sealing of a public record.

¶46. **ON DIRECT APPEAL: AFFIRMED IN PART; REVERSED AND REMANDED IN PART. ON CROSS-APPEAL: AFFIRMED IN PART; REVERSED AND REMANDED IN PART.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., WESTBROOKS, McDONALD, LAWRENCE, EMFINGER AND WEDDLE, JJ., CONCUR. ST. PÉ, J., NOT PARTICIPATING.**